# Rachel E. Taylor et al. *versus* the Delaware & Hudson Canal Company.

1. When it is shown that a foot path across a railroad track has been habitually used by the public for many years without objection, it is a question of fact for the jury to determine whether the railroad company has not acquiesced in such use.

2. When a railroad company has for many years, without objection, permitted the public to cross its tracks at a certain point not in itself a public crossing, it owes the duty of reasonable care toward those using the crossing, and whether such reasonable care has been exercised or not, is ordinarily a question for the jury under all the evidence.

3. A child of tender age, in this case eight years old, will not be held to be guilty of contributory negligence.

February 26th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lackawanna county:* Of January Term, 1886, No. 318.

[Taylor v. Delaware & Hudson Canal Co.]

This was an action on the case brought by Rachel E. Taylor by her father and next friend, John F. Taylor, against the president, managers and company of the Delaware and Hudson Canal Company to recover damages for injuries received by her by being struck by a train of cars while she was crossing the railroad track of the defendant along an alleged foot path in the city of Scranton. The defendant pleaded not guilty. After the plaintiff had closed her case the defendant moved the Court to grant a compulsory nonsuit. The motion was granted and a nonsuit entered. A rule was granted to show cause why the nonsuit should not be taken off. This was discharged, HAND, P. J., filing the following opinion from which the facts of the case sufficiently appear.

This is an action brought to recover damages for injury to the plaintiff, a girl at the time of the accident of eight years of age, while crossing the track of the defendant in the outskirts of the city of Scranton, along an alleged foot-path, as shown in the testimony.

The facts of the case are as follows as gathered from the map and testimony in the case.

Rachel E. Taylor was sent on the 3d day of November, 1883, by her mother to Kelley's store, on Phelps street, about one o'clock, to obtain some oil. From her home on the east side of Washington avenue, in the city of Scranton, she passed across Washington avenue in a westerly direction, and several other streets running at right angles to Washington avenue, crossing private property, passed the school house which she was accustomed to attend, and from the school house along a path to the track of the defendants. As she reached the track, a train of cars was standing upon the switch with a locomotive at the head, blowing off steam. She passed immediately in front of the locomotive and around it, and as she went to step upon the main track of the railroad, was struck by a passing passenger train, thrown down and her foot was crushed; her foot had to be amputated, and it is for this injury that suit is brought.

The train standing upon the switch was a freight train, lying by to enable the passenger train to pass. The passenger train came along at its usual time, running at a rate from twelve to fifteen miles an hour. The railroad of the defendant at this point is the main line of railroad, not near a depot, and in no yard of the defendant; the switch being used for holding the freight train there while the passenger train passed upon the regular track. The alleged foot path went from the schoolhouse to the brow of the cut, the railroad being in a cut a few feet in depth, and the path passed down diagonally along the bank, and diagonally across the track. This path

[Taylor *v.* Delaware & Hudson Canal Co.]

was used, so far as the testimony shows, by persons not for the purpose of crossing directly across the track to reach a point, but for the purpose of going along the track itself, and within the right of way of the railroad, for the purpose of reaching Phelps street, some of the witnesses stating that it was a shorter cut than to pass by the regular streets and alleys of the city.   There was an alley running parallel with the railroad, a short distance from it, entirely outside of the right of way of the railroad, which parties could use and reach Phelps street, as the map shows, by as short if not shorter distance than by the railroad track.

The little girl testified that she could not see the approaching train by reason of the train standing upon the switch; that her attention was called to the locomotive blowing off steam, which she was afraid would start, and which she passed as rapidly as she conveniently could.   Durkin, one of the witnesses who saw the accident and picked the child up, says he saw her running down the bank, saw the train coming, shouted to her, to no avail.   The accident took place a few feet from him.   Some of the witnesses testified that the train was stopped at Phelps street, some just passed it.   The evidence was that the girl could not see the approaching train, and that the engineer of the train could not see her; that immediately as she passed in front of the standing train she was struck.

It was claimed by the plaintiff that this path was a permissive way.   The evidence is that it was not a path leading to any of the works of the company, or that they directly or indirectly acquiesced in it, by any proof except such use of it as the evidence shows.   P. M. Walsh, a witness for the plaintiff, who made the map put in evidence, testified that for fourteen years he knew well the locality and made surveys of that locality for Mr. Phelps and the property owners of New street before he made the surveys for the purpose of this trial, that he was acquainted with the houses in the vicinity of that place about the time of the accident.   He says:   "I didn't know the fact of a crossing above Phelps street until my attention was called to it after the accident, and I was employed to make a survey."   "I found that there was a foot path there, a well-defined, well beaten foot path leading from No. 9 school house across the Delaware and Hudson track up towards Phelps street.   After it crossed the track, the children I presume used it to go up across Phelps street along parallel with the track of the railroad."   "The double dotted line upon this map represents the foot path leading across the railroad; then it ceased to be well defined there; people used sometimes to go to Phelps street this way, and at other times

they would not cross it, but would go that way "—meaning the east side.

Other witnesses testified to the use of this path more or less by the school children. One witness, Mr. Hull, testified that he saw some cross the track and go up, the other side of the bank; he is the only witness who testified to that. There is no evidence of any other use of the path directly across the track. Some witnesses testify to the use of the track itself at times between the rails. At the time of this accident there was no flagman stationed at Phelps street, but there was one stationed there subsequently to the accident. The little girl testified that she heard no bell or whistle; some of the passengers on the train stated they heard no bell or whistle before reaching the pathway. The distance of Phelps street was about one hundred and twenty-seven feet from the place of the accident, and the train was approaching Phelps street.

The route the girl undertook to take to go to Kelley's store was along the track of the railroad, although she had not reached the farther side of the track which she attempted to cross, and when the accident occurred she was upon the railroad after passing the switch of the company.

Upon the showing of the plaintiff's witnesses we granted a nonsuit. Our reasons for granting this nonsuit may be stated as follows:

This is a case of a main track of a railroad with a side switch for the purpose of holding a freight train while the passenger train passes; it is in no yard of the company where cars are switched back and forth for the purpose of making up trains; it is not near any depot, or works of the company; no agents of the company are in the locality, except possibly when the freight train is to be switched off and the brakeman may get off his train to turn the switch.

The path spoken of in the evidence, is not a common and public path directly across the track to any point, used by the public for any particular purpose. It is a path used almost entirely by school children to reach Phelps street. The track and path are in the cut with banks on both sides. The path goes down the bank not at right angles but diagonally, and so far as it crosses the track at all it crosses it diagonally, for the purpose of walking down the track and along it within the railroad right of way. The evidence shows that after leading into the cut, the path was used more upon the east side of the track than upon the west, but used some upon both sides and sometimes in the middle. There is no such use of this path as to constitute a presumption of permission on the part of the company; its use is entirely within a period when continued trespasses could not ripen into a right; it is just such use of

[Taylor *v.* Delaware & Hudson Canal Co.]

the railroad track as is sometimes common in the outskirts of the city, and such as we consider the law severely condemns.

The company had the full right of a clear track at that point; it was not a way of necessity; hardly, we think, can the plea of convenience be urged, for an alley a short distance parallel to the railroad was open to Phelps street, which reached it at the same distance.

We consider the plaintiff was a trespasser upon the track, as all others were during the time when crossing this path, to go down the track. This case differs in this respect from the cases cited, although it is not so strong in its facts as the case of Lewis and the Railroad Company, 29 P. F. S., 33, in which the Court below, and with the approval of the Supreme Court, withdrew the question of permissive way.

If the plaintiff was a trespasser, she was entitled to proper care by the railroad company, but only to proper care, in case such care could avail. The evidence is, that she was running; she herself says she was hurrying past the train with the locomotive standing on the switch; she could not see the approaching train; the engineer could not see her; she darted in front of the standing engine, not over ten feet from it, into the approaching train. Her impetuosity and thoughtlessness, common it is true to a child, put her into a place, in disregard of the shout of her teacher, who warned her without hearing, where no care nor possible foresight of the company could have prevented the accident. The question of speed and signal is out of the case. It is not the case of a trespasser walking on a track in sight of an approaching train. It is the case of a trespasser out of sight, and comes within the rule laid down in the text books and the decisions which relieve the defendant, in our judgment, from liability.

We are of the opinion that the use of this track as a byway, as shown in the evidence, is severely condemned by the decisions of our Courts, particularly in cities and thickly settled towns. It is true that railroad companies are held to accountability even against trespassers walking on the track, but this is a reasonable accountability, not an impossible one.

The case, while perhaps a close one, differs from those to which we have been referred, and in which there is evidence of negligence, sufficient to go to the jury.

After a careful examination of all the cases we are satisfied that if sympathy should control our decision in this case, it would simply be cruelty to the children frequenting this school house. We therefore grant the nonsuit because we deem that no negligence is shown such as contributed to the accident; and secondly, that it was of those inevitable accidents caused by the impetuosity and heedlessness of the child,

which could not have been prevented, being upon the track where there was no public crossing, and where the child could not be seen, such as to throw upon the company any further care than the evidence shows they exercised.

We refer to Wood's Railway Law, volume 2, 1391; Id., 1273; Philadelphia & Reading Railroad Company *v.* Hummel, 44 Pa. St., 375; Railroad Company *v.* Connell, 88 Id., 520; Moore *v.* Railroad Company, 99 Id., 301. The rule to take off nonsuit is discharged.

On the trial the plaintiff offered in evidence:—

Supplement to a resolution of councils in the city of Scranton in regard to flagmen, approved February 7th, 1872, that the provisions of said resolution be and the same are hereby extended to all locomotive railroad companies running through said city. No railroad company aforesaid shall run or permit to be run any of its trains at any street crossing in said city at any rate of speed greater than five miles an hour. Any railroad company or corporation violating the provisions of the resolution to which this is a supplement, shall forfeit and pay a fine of twenty-five dollars for each and every offence, to be recovered for the use of said city before any alderman of said city, as like amounts are by law recoverable.

Counsel for defendant object to the offer as irrelevant and incompetent, the plaintiff's evidence showing that at no rate of speed could the accident have been prevented, as the plaintiff's own testimony is that she could not see any train coming, over the freight train standing on the side track, and that she did not see any train, and went as quick as she could from in front of the standing locomotive to the track where she was injured, being a distance of two or three feet; therefore no rate of speed is material upon the question of negligence of the company, as the accident could not possibly have been avoided to the plaintiff under the circumstances at any rate of speed.

Counsel for plaintiff add to the offer: this is for the purpose of showing negligence on the part of the defendant contributing to the injury.

THE COURT. I do not think this ordinance applies at all.

Counsel for defendant further object, that the crossing at Phelps street is not one mentioned in the ordinance referred to.

THE COURT. We will sustain the objection, and reject the evidence. Exception noted for plaintiff at whose request a bill was sealed. (Third assignment of error.)

Counsel for plaintiff offer in evidence both resolutions, the original and this last one just rejected.

" Joint resolution requiring certain railroad companies to

[Taylor *v.* Delaware & Hudson Canal Co.]

station flagmen at the street crossings of their respective roads in the city," approved June 3d, 1869.

" That the Delaware, Lackawanna ·and Western Railroad Company be required to keep a flagman stationed at the Y crossing on Lackawanna avenue and at the crossing of said avenue in the 4th ward, at the crossing on Washington avenue; and also at the crossing on Adams avenue, and to warn the travelling public of approaching trains; and also that the Lehigh & Susquehanna Railroad Company be required to keep a flagman stationed at the crossing of their road between their depot and the gas house, and near the bridge at the sand banks, and at the crossing near the Dodgetown bridge; and the Lackawanna & Bloomburg Railroad Company at the crossing in the fifth ward on Scranton avenue."

And also the following: Supplement to a resolution in regard to flagmen, approved June 3d, 1869.

That the provisions of said resolution be and the same are hereby extended to all locomotive railroad companies running through said city. No railroad company aforesaid shall run or permit to ·be run any of its trains at any street crossing in said city at a rate of speed greater than five miles an hour. Any railroad company or corporation violating the provisions of the resolution to which this is a supplement shall forfeit and pay a fine of twenty-five dollars for each and every offence, to be recovered for the use of said city before any alderman of said city as like amounts are by law recoverable. Approved July 7th, 1872.

Counsel for defendants object to the offer as irrelevant and incompetent, the plaintiff's evidence showing that at no rate of ʒeed could the accident have been prevented, as the plaintif ɔwn testimony is that she could not see any train coming, ov ⸱ the freight train standing on the side track, and that she did not see any train, and went as quick as she could from in front of the standing locomotive to the track where she was injured, and being a distance of two or three feet, therefore no rate of speed is material upon the question of negligence of the company, as the accident could not possibly have been avoided to the plaintiff under the circumstances at any rate of speed. Further object that the crossing at Phelps street is not one of those mentioned in the ordinance referred to. Approved February 7th, 1872.

THE COURT. This evidence is rejected.

Exception noted for plaintiff, at whose request a bill is sealed. (Fourth assignment of error.)

The plaintiff took this writ, assigning for error the granting of the compulsory nonsuit, the discharging of the rule to take

off the nonsuit, and the rejection of the evidence as above shown.

*Everett Warren (E. N. Willard* with him), for plaintiff in error.—This was a motion for a compulsory nonsuit. All presumptions and inferences therefore which the plaintiff had the right to ask from the jury are to be conceded to her.

Further, if there was any evidence, more than a scintilla from which the jury might reasonably have found in her favor she was entitled to have them pass upon it.

The age of the child precluded the question of contributory negligence.

The child had a perfect right to be at the place when and where she was injured, and she was in no sense a trespasser.

The footpath in this case was as well defined as Phelps street itself, and was as much used by the public generally. It was a long established crossing—enjoyed by men, women and children of all ages for many years prior to the date of the injury. The children attending the public school, which stood about seventy-five feet back from the company's track, for years had used it without let or hindrance on the part of the defendant company, as a means of passage. The plaintiff was approaching this crossing along the well worn and beaten path, across the unfenced meadow. She was on her way to Kelly's store on Phelps street on the west side of the railroad. She had often seen children as well as grown persons cross the track at this place. No servant of the company warned her or others at any time before or at the time of the accident not to cross.

Where a person crosses a railroad track by a common and well known foot path, used by the public for many years without let or hindrance on the part of the employees of the railroad company, he cannot be regarded as a trespasser: Phila. & Reading R. R. Co. *v.* Troutman, 11 W. N. C., 453; Kay *v.* Pennsylvania R. R. Co., 15 P. F. S., 273; Davis *v.* Chicago & N. W. R. R. Co., 15 Am. & Eng. R. R. Cases, 424; Barry, Adm'r, *v.* N. Y. C. & H. R. R. Co., 92 N. Y., 289; Sibley *v.* Ellis, 11 Gray, 417; Vandebeck *v.* Hendry, 34 N. J. Law, 472; Sweeney *v.* Old Colony R. R. Co., 10 Allen, 368.

When a railroad company have for years, without objection, permitted the public to cross its tracks at a certain point, not in itself a public crossing, it owes the duty of reasonable care toward those using the crossing: Barry *v.* N. Y. C. & H. R. R. Co., *supra;* see also Rorer on Railroads, vol. 1, § 476, *et seq.*

2. Under the allowance of this permissive way, therefore, the defendant company was bound to use reasonable care, and the question whether they did or not, considering the circum-

[Taylor *v.* Delaware & Hudson Canal Co.]

stances of this case, was for the jury: Dublin Etc. R. R. Co. *v.* Slattery, L. R., 3 App. Cases, 1155; Illinois C. R. R. Co. *v.* Hammer, 72 Ill., 347; Townley *v.* C. M. & St. P. R. R. Co., 53 Wis., 626; Bateman *v.* Block, 14 E. L. & Eq., 69.

The criterion of the defendant's duty was at least ordinary care and this was a question for the jury: Kay *v.* R. R. Co., 15 P. F. S., 269; Hugett *v.* R. R. Co., 11 Harris, 373; R. R. Co. *v.* Spearen, 11 Wr., 305; Smith *v.* O'Connor, 12 Wr., 218; R. R. Co. *v.* Doak, 2 P. F. S., 381; Pass. R. R. Co. *v.* Henrice, 11 Nor., 431; Goshorn *v.* Smith, Id., 438; R. R. Co. *v.* Fortney, 9 Id., 323; R. R. Co. *v.* Morgan, 1 Nor., 134; West Chester & Phila. R. R. Co. *v.* McElwell, 67 Pa. St., 311; Pa. R. R. Co. *v.* White, 7 Nor., 327.

Especially is this the case where the person exposed to danger is a child of tender years: Lynch *v.* Nurdin, 1 Q. B., 29; R. R. Co. *v.* Spearen, *supra;* R. R. Co. *v.* Lewis, 29 P. F. S., 44; Kay *v.* P. R. R. Co., *supra.*

We also refer to the following authorities sustaining our position on this point: Murphy *v.* Chicago, etc., R. R. Co., 45 Iowa, 661; Brown *v.* Hannibal, etc., R. R. Co., 50 Mo., 461; Daley *v.* Norwich R. R. Co., 26 Conn., 591; Barrett *v.* Midland R. R. Co., 1 Fos. and Fin., 361; N. J. R. R. & Trans. Co. *v.* West, 3 Vroom., 91; Johnson *v.* Hudson River R. Co., 6 Duer., 33; Harty *v.* Central R. R. Co., 42 N. Y., 368; Finlayson *v.* R. R. Co., 1 Dill, 579; Linfield *v.* Old Colony R. R. Co., 10 Cush., 562; Shaw *v.* Boston & W. Corp., 8 Gray, 45; Delaney *v.* M. & St. P. R. R. Co., 33 Wis., 67; Just. Inst., Liber 4, title 3, p. 6, *de putatione;* Nicholson *v.* E. R. R. Co., 41 N. Y., 525, opinion by EARL, C. J.; Sutton *v.* N. Y. C. & H. R. R. R. Co., 66 N. Y., 243; Hounsell *v.* Smith, 97 Eng., C. L., 729; British Mus. *v.* Finnis, 5 Craig & P., 460.

There is no absolute rule as to what constitutes negligence; that conduct which might be so termed in one case, being in another properly considered ordinary care; nor in case where it is concurrent, will the same apply to adults and to children. It is always a question of fact for the jury, under the instruction of the Court, as to the relative degree of care, or the want of it, growing out of the circumstances and conduct of the parties: Phil. & Read. R. R. Co. *v.* Spearen, 47 Pa. St., 300.

3. The defendant was guilty of negligence: (*a*) In constructing the side track at the time and place they did, and allowing the engine and long line of freight cars to stand upon it and so near the crossing as to entirely obstruct the view of the plaintiff in the direction in which the train was coming on the main track: Toledo, Wabash & Western R. R. Co. *v.* Green, 67 Ill., 199; Harris v. Uebelhoer, 75 N. Y., 169; Cen-

tral R. R. Co. of N. J. v. Feller, 84 Pa. St., 156; R. R. Co. v. Spearen, 11 Wr., 300.

(b) In violating the ordinance of the city of Scranton regulating the speed of trains within the city limits, at street crossings, by approaching this and the Phelps street crossing below at a reckless and highly dangerous rate of speed.

(c) In violating another ordinance of the city of Scranton, in failing to place a flagman at the Phelps street crossing, taking into consideration the proximity of the *locus in quo* to Phelps street and the subsequent action of the flagman stationed there.

(d) In omitting the ringing of the bell and sounding of the whistle on nearing the crossing, the view of the track being obstructed—the known habits of the people, especially school children, in this vicinity.

This plain omission of a plain duty by the defendant, standing by itself, entitles her to have this judgment reversed and a procedendo awarded. Surely it was not for the judge to say that this failure in no way contributed to the injury: L. Kelly v. R. R. Co., 6 Am. and Eng. R. R. Cases, 95; Railroad Company v. Stinger, 28 P. F. S., 319; The Penna. Co. v. Allen, 3 Penny., 170; Phila. & Trenton R. Co. v. Hagan, 11 Wr., 244; P. B. & R. Co. v. Killips, 7 Nor., 412; Penna. R. R. Co. v. Ogler, 11 Casey, 72; Longenecker v. Penn. R. R. Co., 9 Out., 328.

*William H. Jessup* (*Horace E. Hana* with him), for defendant in error.—1. The plaintiff not being a passenger upon the cars of defendants, the burden of proving negligence is upon the plaintiff, and the legal presumption is against negligence.

"In actions for injuries not based on contract, the burden of proof of negligence is on the plaintiff:" Wharton on Negligence, § 421.

"To warrant," says ERLE, C. J., "a case of this class being left to the jury, it is not enough that there may be some evidence. A mere *scintilla* of evidence is not sufficient, but there must be proof of well-defined negligence: Cotton v. Wood, 8 Com. B. N. S., 568; Penna. R. R. Co. v. Weber, 26 P. F. S., 157; D. L. & W. R. R. Co. v. Napheys, 90 Pa. St., 142.

2. If there is no sufficient proof of negligence, the Court must take the case away from the jury: Phila. & Reading v. Yeager, 23 P. F. S., 121; Phila. & Reading v. Heil, 5 W. N. C., 91; Clark v. Phila. & Reading R. R. Co., 5 W. N. C., 119; Penna. R. R. Co. v. Fries, 5 W. N. C., 541; Goshorn v. Smith, 92 Pa. St., 435; Parrott v. Webbs, 15 Wall., 524; Howard Ex. Co. v. Wile, 64 Pa. St., 201; Longenecker v. Penna. R. R.

Co., 42 Leg. Int., 59; Hyatt v. Johnson, 10 Nor., 196; Phila. & Reading R. R. Co. v. Yeager, 73 Pa. St.. 121; Ryder v. Wombwell, 4 Law Rep. Exch., 32.

3. The negligence alleged must be the proximate cause of the injury complained of: Morrison v. Davis, 8 Harris, 171; Fairbank v. Kerr, 70 Pa. St., 86; Scott v. Hunter, 10 Wr., 192; McGraw v. Stone, 3 P. F. S., 441; Pa. R. R. Co. v. Kerr, 12 P. F. S., 353; Fleming v. Beck, 12 Wright, 313; Phil. & Read. R. R. Co. v. Spearen, 47 Pa. St., 302; Goshorn v. Smith, 92 Pa. St., 434.

4. The plaintiff must not have been guilty of contributory negligence.

(*a*) Contributory negligence is not imputable to a child of tender years.

(*b*) As the plaintiff was nonsuited, it must be taken as admitted that she was of tender years: Wharton, Neg., Sec. 300, 301.

5. The defendants had a right to a clear track at all points upon their road, except at public crossings: Phila. &c. R. R. Co. v. Hummel, 44 Pa. St., 375.

If obstacles obstruct the view they must use increased vigilance.

"The fact that the view of the track may have been obscured by other cars left standing on the side track does not lessen the caution required of a person attempting to cross, but imposes upon him the duty of exercising a higher degree of diligence:" Wood's Law of Railways, p. 1329, cites Garland v. Chicago R. R. Co., 8 Brad. Ill., 571; Haas v. Grand Rapids R. R. Co., 47 Mich., 401.

Of this case, Beach, in his late work on Contributory Negligence, says, (p. 208):

"This is a luminous and explicit statement of the rule as held, not only in Pennsylvania, but in other states of the Union. Where this rule prevails, only such aggravated negligence as amounts to intentional mischief on the part of the railway will render it liable in the event of an injury to a trespasser," and cites among others, the following cases: Jeffersonville &c. R. R. Co. v. Goldsmith, 47 Ind., 43; LaFayette &c. R. R. Co. v. Huffman, 28 Id., 287; Cincinnati &c. R. R. Co. v. Eaton, 53 Id., 310; Evansville &c. R. R. Co. v. Wolf, 59 Id., 89; Kenyon v. N. Y. &c. R. R. Co., 5 Hun, 479; Green v. Erie Ry. Co., 11 Id., 333; Balto. &c. R. R. Co. v. Schwindling, 101 Pa. St., 258; Railroad Co. v. Houston, 95 U. S., 697; Gaynor v. Old Colony R. R. Co., 100 Mass., 208; Pittsburgh &c. R. R. Co. v. Collins, 87 Pa. St., 405.

(*a*) At public crossings their rights are concurrent with those of the public: Reeves v. D. L. & W. R. R. Co., 30 Pa.

St., 454; North Pa. R. R. Co. v. Heileman, 49 Pa. St., 60; Wood, Railways, page 1322; Cordell v. N. Y. Cent. R. R. Co., 70 N. Y., 119; Beach on Cont. Neg., p. 203: Thomas v. Del. R. R., 19 Blatch., 533.

6. Where the defendants have a right to a clear track, all persons not in the employ of the defendants, going upon such track are trespassers.

(a) There is no difference in the rule between children and adults: Moore v. Pa. R. R. Co., 99 Pa. St., 301; Cawley v. R. R. Co., 95 Pa. St., 398; The Same, 39 Leg. Int., 348; Railroad v. Hummel, *supra.*

(a) The defendants owe no duty to trespassers: R. R. v. Hummel, *supra*; Phila & Read. R. R. Co. v. Spearen, 11 Wright, 301.

(1). Either of signals.

Harty v. Central R. R. of N. J., 42 N. Y., 471; Railroad v. Hummel, *supra*, p. 379; Wood's Railway Law, p. 1327; Phila. & Read. R. R. Co. v. Spearen, *supra*, p. 302; Balto. R. R. Co. v. Schwindling, 101 Pa. St. p. 292.

(2). Or of ordinary care: Id.

(b) They are only liable for gross or wanton injury.

"A railway company owes no duty to a trespasser upon its tracks or premises other than that which every person owes to another not to do him a wilful or malicious injury: Wood, Law of Railways, p. 1263.

"When a person goes upon the track he cannot recover from the company except for wanton injury, although the negligence of the company's agent contributed to the result:" Mulherrin v. D. L. & W. R. R. Co., 81 Pa. St., 366.

7. The defendants may lose their right to a clear track: Barry v. N. Y. C. & H. R. R., 92 N. Y., 289.

"Even trespasses will ripen into right by sufferance and lapse of time, as a way used for twenty-one years:" Kay v. Pa. R. R. Co., 65 Pa. St. p. 273.

8. There is no presumption that defendants have lost their right to a clear track.

9. When a person sets up either a right or a license to be upon a railroad track he must prove it by clear and satisfactory evidence.

10. In case of a license there is no presumption of negligence.

(a) Negligence contributing to the accident must be proved.

(b) To impose liability, the want of care in the particular respect complained of must have been the proximate cause of the injury.

11. Where want of ordinary care as to the rate of speed is alleged as the proximate cause of injury (as in this case), yet

[Taylor *v.* Delaware & Hudson Canal Co.]

if it appears from the plaintiff's own case that ordinary care in that respect would not have avoided the injury, such want of ordinary care would be immaterial and impose no liability.

12. The same rule holds good with reference to omission of signals.

13. The Court is bound to take notice of the laws of inertia and other natural laws in determining whether there is sufficient evidence of want of ordinary care to submit the question to the jury.

" An offer to prove an improbable thing must be received. But an offer to prove a fact which can only exist by the suspension of natural laws does not come within the rule : " Cauley *v.* Pitts. C. & St. L. Ry. Co., 39 Leg. Int. p. 348.

14. As the plaintiff was a trespasser not at a public crossing, the omission to have a flagman, even if required by ordinance, at Phelps street, did not cause or contribute to the injury, and therefore was immaterial.

15. Where there is no evidence from which the jury ought reasonably to infer negligence which was the proximate cause of the injury, or upon which the Court would permit a verdict to stand, the case should be withdrawn from the jury.

16. From the evidence in this case, the plaintiff was a trespasser, not at a public crossing, and the defendants owed her neither the duty of signals nor of ordinary care—her sudden and unexpected darting upon the track a few feet in front of a passing train rendered the question of speed immaterial, as no rate of speed, however slow would have saved her.

Mr. Justice STERRETT delivered the opinion of the court, October 4th, 1886.

In his opinion refusing to take off the compulsory nonsuit, the learned president of the Common Pleas concedes the case is a close one, but appears to think the judgment should be sustained on the ground that the child's unfortunate injury resulted from her own impetuosity and heedlessness, and not from any neglect of duty on the part of defendant company. If he is correct in this, the nonsuit was rightly entered. But, plaintiffs' contention is that the jury would have been warranted in finding negligence of the company defendant, from which the injury complained of resulted; that the testimony tended to prove such facts and circumstances as bring the case within the general principle recognized and approved by this Court in The Philadelphia and Reading Railroad Company *v.* Trautman, 11 W. N. C., 453, in which it is ruled that where a person crossed a railroad track by a common and well-known footpath used by the public for many years without let or hindrance on the part of the railroad company and its employés,

he cannot be regarded as a trespasser; and, where it is shown, as was done in this case, that the footpath, across the company's land, has been habitually used by the public for many years without objection, it is for the jury to say whether the company has not acquiesced in such use.

While such use does not convert the company's right of way into a public highway, it certainly does relieve persons passing on the same from being treated as trespassers on the company's premises; and there is a manifest distinction between the degree of care which a railroad company is bound to exercise towards mere trespassers and those who may be using the right of way by tacit consent or implied permission of the company. In the case of such long continued use by the public, the company and its employés are charged with notice of the fact, and therefore cannot with impunity neglect precautions to prevent danger to persons thus using the same. In Benny v. The Railroad Company, 92 N. Y., it is said: "The acquiescence of defendant for so long a time, in the crossing of the tracks by pedestrians, amounted to a license and permission, by defendant, to all persons to cross the tracks at this point. These circumstances imposed a duty on the defendant, in respect of persons using the crossing, to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business, and could have withdrawn its permission to the public to use its premises as a public highway, assuming that no public right therein existed; but, so long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury. . . . . . The company, in such cases, is an actor at the time in creating the circumstances which imperil human life, and it would be alarming doctrine that it was under no duty to exercise any care in the movement of its trains."

The principle clearly settled by the foregoing, and many other cases that might be cited, is, that when a railroad company has for years, without objection, permitted the public to cross its tracks at a certain point not in itself a public crossing, it owes the duty of reasonable care towards those using the crossing; and whether in a given case such reasonable care has been exercised, or not, is ordinarily a question for the jury under all the evidence.

Without undertaking to review the testimony on which plaintiff relied, we think the evidence is quite sufficient to warrant the submission of her case to a jury on the questions of permissive crossing at the point where she was injured, and

[Appeal of City of Scranton School District.]

whether in the movement of its train the company exercised that degree of care, which, under the circumstances, it was in duty bound to do.

There was testimony tending to show the whistle was not sounded, bell not rung, nor any warning given of the approach of the train by which plaintiff was struck. This was properly for the consideration of the jury; and in view of all the circumstances, including the fact that the siding was occupied by a standing train of cars and the main track thus out of view, we have no right to say the jury would not have found negligence in not warning those who might be in the act of crossing that the train was approaching. If plaintiff had been duly warned, either by sounding the whistle or ringing the bell, it is not at all probable she would have attempted to cross the track in the face of known danger. The question of contributory negligence does not arise in the case. The age of plaintiff at the time of the accident precludes that. If, under the evidence, she was not a trespasser on the premises of the company, the question is whether it was not their duty to give suitable warning of the approach of their train; and, failing to do that, whether they were not guilty of negligence which was the proximate cause of the injury. The first and second specifications of error are sustained. There was no error in refusing to receive the evidence specified in the third and fourth assignments, and hence they are not sustained.

Judgment reversed and a *procedendo* awarded.