# J. H. Eply and Nancy Eply *v.* The Lehigh Valley Railroad Company, Appellant.

*Negligence—Question for jury—Duty to give danger signal.*

The case is for the jury where there is evidence, tending to prove that the train was running very rapidly on a straight track with a clear view thereof for two miles ahead from the engine cab; that an infant was seen standing near the track at a crossing and facing the engine fully half a mile away; and that the engineer and fireman did not ring a bell or blow the whistle, which might have aroused and alarmed the boy and caused him to advance or retreat to a place of safety.

It was for the jury to say whether some danger signal should not have been given.

*Negligence—Railroads—Increased speed demands increased care.*

A railroad company when moving its trains through an open and sparsely settled country has the right to do so as rapidly as their machinery and roadbed will allow. Fast running under such circumstances does not in itself amount to negligence. Increased speed means, however, increased danger to persons crossing the track and increased care on the part of the railroad company becomes a duty.

Argued Jan. 19, 1897. Appeal, No. 4, Jan. T., 1897, by defendant, from judgment of C. P. Bradford Co., May T., 1894, No. 706, on verdict for plaintiffs. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass to recover for negligent killing of plaintiff's son. Before PECK, P. J.

The court reserved the point whether "there was any evidence in this case upon which plaintiffs are entitled to recover," and on January 6, 1896, without filing an opinion, directed judgment to be entered on the verdict.

The facts are sufficiently set forth in the opinion of the Superior Court.

Verdict for plaintiffs for $1,000. Defendant appealed.

*Errors assigned* were (1, 2) refusal of binding instructions in favor of defendant.

*W. T. Davies,* of *Davies & Davies,* and *Henry Streeter,* for appellant.—There was no evidence that the train was running at

a dangerous, reckless, unreasonable or improper speed, or that the speed of the train in any wise contributed to the accident: Goshorn v. Smith, 92 Pa. 435; Railroad Co. v. Ritchie, 102 Pa. 425.

A high rate of speed is not negligence per se: Childs v. Railroad, 150 Pa. 73.

We have the case of a little boy not quite seven years old, unexpectedly and without warning running in front of a moving engine: Fleishman v. R. R., 174 Pa. 510.

It was grave error to submit the question of negligence to the jury, when there was no evidence of it: Chilton v. R. R., 152 Pa. 425; Funk v. R. R., 175 Pa. 559.

A clearer case for binding instructions would hardly have been presented and the duty of the court was plain: Woodbridge v. R. R., 105 Pa. 460; Funk v. R. R., 175 Pa. 559.

*D. C. De Witt*, for appellee.—The company had allowed the neighboring population to use its tracks as a way across their lot: Kay v. Railroad Co., 65 Pa. 269, which is cited with approval in later cases.

It is clearly the duty of the engineer and fireman to give warning by sounding the whistle or ringing the bell or hallooing to the boy. Then if the boy did not move the engine should have been reversed and every effort made to stop the train. These being the facts in this case it was one proper for the jury: Railroad Co. v. Morgan, 82 Pa. 134.

It is the duty of those in charge of a train when approaching a public crossing to give notice by whistling, ringing the bell, or other device sufficient to give warning of the approach, and in sufficient time to enable those coming to the crossing to stop in safety, or, if on the track to get out of danger; also to look along the track, and if they see, or might see, by due care and caution, any obstruction on the track, to check the train by every means in their power: Railway Co. v. Dunn, 56 Pa. 280.

OPINION BY WICKHAM, J., February 16, 1897:

About half past 5 o'clock, on the evening of April 9, 1894, the plaintiff's son Frank, aged six years and eleven months, was struck by a south bound train of the defendant company on the Barclay Railroad, at a crossing, and instantly killed. The de-

fendant company, it seems, had an arrangement with the Barclay Railroad Company for the use of the latter's tracks. The fact that the boy was struck was not known to anyone on the train until the next morning.

The plaintiffs allege that the train was running at a speed of about sixty miles an hour. The defendant, while conceding that the train was behind time and was going somewhat faster than usual, avers that the speed thereof did not exceed twenty-eight miles an hour, at the most. The evidence is conflicting about this matter, but whatever may be the truth concerning it, we do not think that fast running, under the circumstances, would, in itself, amount to negligence. The country through which the train was passing was open and sparsely settled, and the defendant had the right to move its trains as rapidly as their machinery and roadbed would allow: Childs v. P. R. R. R. Co., 150 Pa. 73. In the same case, however, it is laid down, that as increased speed means increased danger to persons crossing the track, increased care on the part of the railroad company becomes a duty.

There is also some controversy whether or not the crossing where the child was killed, and which for convenience we may call the Eply crossing, is public or private in its character. There is considerable evidence in favor of the theory that it belongs to an old and little used highway, narrowed at all points and at one end obstructed or closed, but this question, under the peculiar circumstances of the case, is not of much importance. It is quite certain that the way, which is about fifteen feet wide, existed for more than forty years, long before the railroad was laid, and that it was recognized by the Barclay Railroad Company, which company at all times kept the crossing in repair and planked so as to be fit for use. Ever since the railroad was built, the crossing and road were used freely, not only by owners and occupiers of lands in the vicinity, but as well by all who desired so to do. It was mainly traveled, however, by the Eplys and a family named Wolfe, living near by and east of the railway.

It had never been the practice of the defendant company's engineers, or those of the Barclay Railroad Company, to whistle or ring the bell for this crossing, and, perhaps, ordinarily they were not required to do so. About two hundred and seven

rods north, the course of the railroad being north and south, is another crossing known as Scott's, and north of that is a whistling post. This whistling post is two hundred and seventy-eight rods and thirteen and one-half feet north of the Eply crossing. After passing Scott's crossing, going south, and reaching a point about two hundred rods north of Eply's an unobstructed view can be had, from a locomotive cab, for more than two miles ahead, the track being straight for that distance. The road or lane, for which the crossing exists, commences at the public highway, which runs parallel with the railway, and connects Towanda and Monroeton. From its intersection with that highway, it runs some fifteen hundred feet east, crossing the railway at a right angle, and practically ends at the Eply and Wolfe houses. The plaintiff's house is three hundred to three hundred and fifty feet east of the railway.

A short time before he was killed Frank Eply, accompanied by two playmates, Deleon Smith, aged ten, and Mit Robinson, less than six years old, came home from school. His companions stopped a few feet west of the crossing, to play in a brook, which crosses the road at that place and is spanned by a small bridge. Presently they called on him from the crossing to rejoin them, which he started to do. Just before this, Mrs. Eply, who was alone at the time, saw her boy in the yard. She says she walked around the woodshed to feed some chickens, thus losing sight of him, and did not see him again alive. The accident must have happened very soon after she saw him in the yard. The evidence is conflicting as to what occurred immediately before his death. Young Smith, a witness for the plaintiffs, says that Frank started on a run from the house, accompanied by his dog, which was barking; that he seemed not to have observed the approaching train, and never stopped until he was struck by the locomotive on the crossing. On the other hand, the fireman of the engine, who was called in behalf of the defendant, testifies that when the train was half a mile distant from the scene of the accident he noticed the boy at the crossing, standing four or five feet from the left rail, the dog being between the tracks; that he so remained, facing the coming train, until the engine was as near to him as the length of two or three rails, when he ran as fast as he could in an attempt to cross the track; that when he got on the middle of the track

he disappeared from view, the front of the engine concealing him, and that he, the fireman, then went quickly to the right-hand side of the engine, and looking back, saw a boy that he supposed was the same one standing near the rear of the train uninjured.

These two witnesses are the only ones who profess to have actually seen the deceased when he was on or near the railroad, although there is some evidence corroborative of young Smith's account of the accident. The engineer says he did not see the boy at all. It is conceded that the whistle was not blown, nor the bell rung, south of the whistling post for Scott's crossing, which, as we have seen, was two hundred and seventy-eight rods and thirteen and a half feet north of the Eply crossing. Young Smith testifies, that when Frank was struck he, Smith, and the smaller boy, Robinson, were down at the bridge already spoken of, which was probably a rod west of the crossing.

It is not, and cannot be contended here, that the child could be, or that the mother was, guilty of any contributory negligence. The argument of the appellant's counsel is properly confined to the one question, whether there was sufficient evidence of negligence on the part of defendant's servants to be submitted to the jury. It is urged strongly that the unfortunate accident resulted, not from any carelessness or recklessness of the engineer or fireman, but because of a sudden childish impulse on the part of the deceased, which led him to thoughtlessly rush to his death. In considering the question before us, we need only take the testimony of the fireman, the defendant's own witness, in connection with the uncontroverted facts, to reach the conclusion that the court below committed no error in sending the case to the jury. We quote from the fireman's testimony on cross-examination:

" Q. When you first saw the boy and the dog was the boy standing up or sitting down? A. Standing up. Q. Did the boy move at all until you got within about ninety feet of the —— A. He stood perfectly still until we got the length of two or three rails from him. Q. Which way was the boy's face? A. Towards the engine. Q. His face was right towards the engine? A. Yes, sir. Q. Was the dog standing up or sitting down? A. Sitting down about a foot or eight or ten inches away from the rail, inside of the rail. Q. Then the dog

was close enough so that you could hit him? A. Yes, if he had staid there, but the dog got off. Q. If the dog had remained you would have hit him? A. Yes, sir. Q. But you gave no signal with your engine? A. No, sir. Q. You didn't ring any bell? A. No, I didn't think it was necessary. Q. In your judgment, how long did that boy stand there? A. Why, I couldn't exactly say. He stood there quite a little while. I could see him from very near from Scott's crossing, this side of Scott's crossing; it was about a half a mile, I should think, from the time I saw the boy. .Q. How long, in your judgment, was it? A. Why, he must have stood there half a minute or such a matter, I should think. Q. You think he stood there half a minute? A. Yes, sir. Q. And during that time your train ran half a mile, and you think your train was running about twenty miles an hour? A. About twenty or twenty-five, or such a matter; somewhere along there. Q. If you ran that half mile in half a minute, your train was going sixty miles an hour? A. At that rate; yes, sir."

In the light of this testimony, which the defendant cannot complain was submitted to the jury, as it came from its principal witness, the learned trial judge would have been clearly in error had he given a binding instruction in favor of the defendant. It was for the jury to decide whether young Smith or the fireman told the truth. Accepting the statement of the latter, we find that when fully half a mile distant, he plainly saw the child loitering at the crossing under such circumstances as to be practically in danger from the swiftly running train, considering his tender years, immature judgment, and naturally impulsive disposition. The boy must have been equally visible to the engineer, had the latter been ordinarily watchful, as he testifies that his vision could embrace the whole track ahead, from a point twenty to thirty feet in front of his engine. It is quite probable that a few short, sharp sounds of the whistle would have aroused and alarmed the boy and caused him to advance or retreat to a place of safety, instead of waiting until the locomotive was almost on him. Many a child has been saved from death or injury on the ordinary highways by the unintelligible shouts of the driver of a common vehicle.

We do not say that it was the duty of those in charge of the train, under the facts of the case, to stop, or perhaps to even

slacken speed, but it was for the jury to say whether some danger signal should not have been given. The whistle and bell on a locomotive ought to be used, not merely in an effort to save those who are in actual imminent peril, but as well to warn those who, there is any reason to fear, may involuntarily put themselves in a place of danger.

In some material respects, the case in hand greatly resembles that of Taylor v. Delaware & Hudson Canal Company, 113 Pa. 162. There, the plaintiff, a girl eight years old, was injured while running across the defendant's railway, on what was, at the most, a permissive footway. The engineer, because of a train standing on a siding, could not see her until she ran in front of the engine. The court in reversing the judgment of nonsuit granted by the court below, said: "If plaintiff had been duly warned, either by sounding the whistle or ringing the bell, it is not at all probable she would have attempted to cross the track in the face of known danger. The question of contributory negligence does not arise in the case. The age of plaintiff at the time of the accident precludes that. If, under the evidence, she was not a trespasser on the premises of the company, the question is, whether it was not their duty to give suitable warnings of the approach of their train; and failing to do that, whether they are not guilty of negligence which was the proximate cause of the injury."

Nothing more need be said in vindication of the judgment and the manner in which the case was tried in the court below.

Judgment affirmed.