GARNER et al. v. TRUMBULL.

(Circuit Court of Appeals, Eighth Circuit. April 3, 1899.)

No. 1,123.

1. RAILROADS—CARE REQUIRED AS TO PERSON ON TRACK.

When, for a considerable period, numerous persons have been accustomed to walk across or along a railroad track between given points, those in charge of passing trains are required to take notice of such fact, and to use reasonable precautions to prevent injury to persons whose probable presence on the track should be anticipated.

2. SAME—INJURY TO CHILD—CONTRIBUTORY NEGLIGENCE OF PARENTS.

Where the father of a child two years of age was absent from home, and the mother had gone to a neighbor's, a short distance away, leaving the child, with older children, at play in the yard, where a neighbor was also at work, and the child escaped, unobserved, and went upon a railroad track some 250 feet from the house, and was run over and killed by a passing train. it cannot be held, as a matter of law, that the parents were guilty of contributory negligence, but the question is one for the jury.

In Error to the Circuit Court of the United States for the District of Colorado.

John A. Gordon (A. P. Anderson, on the brief), for plaintiffs in error.

Tyson S. Dines and E. E. Whitted, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This suit was brought by W. A. Garner and Etta Garner, the plaintiffs in error, against Frank Trumbull, as receiver of the Union Pacific, Denver & Gulf Railway Company, the defendant in error, to recover damages on account of the death of their minor child, John C. Garner, who was run over and killed by a train which was being operated at the time for and in behalf of the receiver. The accident occurred in Las Animas county, Colo., about three miles from the city of Trinidad, and between that city and a town called "El Moro." In the immediate vicinity of the place where the accident occurred was a small settlement called "Chilili." The train which ran over the child was a coal train, consisting of a locomotive, seven empty cars, and a caboose. The complaint alleged, in substance, and there was evidence tending to show, that the parents of the child, who was about two years old, lived in a house which was about 256 feet from the track of the Union Pacific, Denver & Gulf Railway Company; that, during the temporary absence of the child's mother (she having gone on an errand to the house of her sister, who lived about a quarter of a mile distant), the child strayed away from home and from the custody of those in whose charge it had been left, and got on the railroad track, where it was run over and killed; that at the place where the accident occurred the track was perfectly straight, so that the child might have been seen from the direction in which the train approached for a distance of over 600 yards, the atmosphere being very clear; and that the track at that place, and for a considerable distance in either direction therefrom, had been used for a long time by the people and villagers,

who lived in considerable numbers along the right of way and on both sides thereof, as a footpath for the purpose of going to and from the city of Trinidad, and to and from their work, and to and from each others' houses, either on business or as visitors. At the conclusion of the plaintiffs' evidence, and without the production of any evidence on the part of the defendant, the court directed a verdict in favor of the defendant, which is the error complained of. This instruction was doubtless given on the theory that the child was a trespasser on the track of the railway company; that the engineer of the train, and other train operatives, on that account, owed the child no duty until they saw it; and that they were under no obligation to anticipate its presence on the track, or to be on the lookout either for it or other persons at the place where it was run over and killed. There are some adjudged cases which doubtless support such a view, but we are persuaded that it is not a correct rule, as applied to those portions of a railroad track which many people have been in the habit of using as a footpath for a considerable period, without objection on the part of the railway company, although without any express license to do so. Train operatives ought to be required to take notice of such usages and of conditions which actually exist, and to regulate their actions accordingly. A proper regard for the safety of persons and property intrusted to their charge, and for human life in general, should impel them to do so. When, therefore, for a considerable period, numerous persons have been accustomed to walk across a railroad track or along a railroad track between given points, either for business or pleasure, railroad engineers should take notice of such practice, and, when approaching such places, should be required to exercise reasonable precautions to prevent injuring them. Knowing the usage which prevails, they may reasonably be required to anticipate the probable presence of persons on or near the track at such places, and to be on the lookout when their attention is not directed to the performance of their other duties. The natural impulses of a person who has a proper regard for the welfare of others would prompt him to thus act. In the case of Gulf, C. & S. F. R. Co. v. Washington, 4 U. S. App. 121, 127, 129, 1 C. C. A. 286, and 49 Fed. 347, this court applied the same doctrine, in substance, to a case where stock had been killed on a railroad track; holding that in a country where great numbers of cattle ran at large, and the owners thereof were not bound to fence them in, nor railway companies to fence their tracks, railroad engineers were required to take notice of existing conditions, and exercise ordinary care to discover stock which might be on the track, and that they were justly chargeable with negligence for failing to do so. This rule is enforced in the state of Colorado; that is to say, it is held that when cattle are allowed to roam at large, and railroads do not fence their tracks, railroad engineers are bound to anticipate that cattle may stray on the track, and to keep a lookout for stock, and that railroad companies may be held liable to the owners of stock for a failure to exercise ordinary care in this respect. Railway Co. v. Henderson, 10 Colo. 1, 13 Pac. 910; Railway Co. v. Patterson, 4 Colo. App. 575, 577, 36 Pac. 913. In Cahill v. Railway Co., 46 U. S.

App. 85–89, 20 C. C. A. 186, and 74 Fed. 287, the court said "that in places on railroad tracks where people are accustomed to come and go frequently in considerable numbers, and where, by reason of such custom, their presence upon the track is probable and ought to be anticipated, those in charge of passing trains must use reasonable precautions to avoid injury, even to those who, in a strict sense, might be called trespassers." And in the case of Felton v. Aubrey, 43 U. S. App. 278–296, 20 C. C. A. 445, and 74 Fed. 359, the court of appeals for the Sixth circuit said that if a railroad company "has permitted the public for a long period of time habitually and openly to cross its track at a particular place, or use the track as a pathway between particular localities, it cannot say that it was not bound to anticipate the presence of such persons on its track, and was therefore not under obligation to operate its trains with any regard to the safety of those there by its license." In other jurisdictions the principle has also been enunciated that where a practice has become common of crossing a railroad track at a certain place, or using it as a pathway between certain localities, and such practice has grown up with the implied sanction of the railroad company, a duty is imposed upon its trainmen to anticipate the probable presence of pedestrians at such places, and to exercise ordinary care to avoid running them down. Taylor v. Canal Co., 113 Pa. St. 162–175, 8 Atl. 43; Barry v. Railroad Co., 92 N. Y. 289–292; Roth v. Depot Co., 13 Wash. 525, 43 Pac. 641, and 44 Pac. 253, and cases there cited; Frick v. Railway Co., 75 Mo. 595, 610; Le May v. Railway Co., 105 Mo. 361, 16 S. W. 1049.

In view of the testimony tending to show the extent to which the track at the place where the accident occurred had been used by the public, and the length of time such use had continued, we think it was the province of the jury to decide whether such use had not been of such long standing and of such a nature as to impose on train operatives, on approaching that locality, the duty of anticipating the probable presence of persons on or near the track, and of exercising ordinary watchfulness to avoid injuring them. And, on the assumption that the jury would have found that the engineer or fireman was under an obligation to keep a lookout for persons who might be on or near the track, we are also of opinion that the testimony concerning the distance at which the child might have been seen before it was run over (one witness, who had measured the distance, saying that it could have been seen for 2,300 feet) rendered it necessary for the jury to determine whether the engineer and fireman did in fact exercise ordinary care to discover the child.

It is suggested in behalf of the defendant in error that the instruction given by the trial court may be sustained on the ground that the parents of the child were guilty of such contributory negligence as precludes a recovery, but we are of opinion that this proposition is untenable. The evidence showed that the child's father was absent from home on the day of the accident; that the mother, as before stated, had gone on an errand to her sister's house, a short distance away; that the child, in company with its three brothers and sisters, the eldest of whom was a girl eight years old, was

left playing in the front yard of the parents' house; and that a neighbor of the family, a full-grown man, was at work in the same yard where the children were at play. The child seems to have escaped, unobserved, and gone on the railroad track, some 256 feet from the house. On this state of facts, we are unwilling to say, as a matter of law, considering the station in life which these plaintiffs appear to have occupied, that they were guilty of contributory negligence. We think that this issue, like the others, was properly one for the jury. The judgment of the circuit court is therefore reversed, and the case is remanded for a new trial.