SCHMIDT v. PENNSYLVANIA R. R.

(Circuit Court of Appeals, Third Circuit. August 19, 1910.)

RAILROADS (§ 358*)—INJURIES TO PERSONS USING—LICENSEE—DUTY OF RAIL-
ROAD TOWARD PERMISSIVE WAY ACROSS.

Defendant railroad company opened a freight train at a point where two paths crossing the track converged, near the center of a city block. These paths had been used freely by workmen and others who were accustomed to cross the tracks for a long time. Plaintiff, a boy of 8½, was injured while crossing through the opening between the cars by being run over by the train while being closed together after he had tripped and fallen over a rail. *Held*, that plaintiff was a mere licensee as to whom the railroad company was under no obligation to give warning before the closing of the cut, and that it was therefore not liable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1237; Dec. Dig. § 358.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Action by one Schmidt against the Pennsylvania Railroad. From a judgment for defendant, plaintiff brings error. Affirmed.

Alfred P. Skinner, for plaintiff in error.

Albert C. Wall and James B. Vredenburgh, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The plaintiff, a boy some eight and a half years old, was injured while crossing the tracks of the defendant company between the cars of a parted freight train, at a point intermediate between certain streets in the city of Newark. The place where the accident occurred was the center of a city block or square, across which the defendant company has two tracks, running north and south, and extending to a freight yard a short distance beyond. The land on the east side of the tracks, within the square, is entirely vacant, and nearly so on the west side; and on the east the space is frequently used by children as a playground. The square not being inclosed by fences, workmen and others are accustomed to cross freely from one side to the other, passing over the railroad tracks in doing so. Two well-defined diagonal paths, prior to the accident, had developed in this way on the east side, which converged and met at the tracks somewhere about the center of the square; and a similar path starting just opposite to this across the tracks ran northwest to the side streets in that direction. This condition had existed for several years, and was well understood and made use of by persons living in the neighborhood.

On the day of the accident, the complainant and a companion, after watching some boys who were playing ball on the east side, started to cross the tracks, at the point where the two paths converged, in order to take the path on the other side, on their way home. Some cars of broken stone were being unloaded on the easterly track, and the stone was scattered in piles along it; and on the westerly track

there was a long train of freight cars with an engine attached, which had been uncoupled and cut in two for some purpose about at the point where the path crossed the tracks, the boys taking advantage of the opening in the train to get by. The first boy got safely through; but the plaintiff, in some way, caught his foot under the outer rail as he was about to step over it and tripped and fell, landing outside of the track; and just at that moment the cars were bumped together by the engine at the other end, a considerable distance off, and the wheels ran over and severed the plaintiff's leg. The contention is that, by the long acquiescence of the defendant company in the use of the paths running up to and crossing their right of way, the public had acquired the right to cross at that point, which the company was bound to take notice of and respect; and that, having cut and opened the train, which was on the westerly track, at the point where the path crossed it, the men in charge of the train, before closing the opening, were bound to give warning, either by some one stationed at the place for the purpose, or by the engine, at the other end, whistling or ringing its bell; and that to bump the cars together without notice, and without regard to whether any one was going across, as was done, was negligence which made the company liable to any one such as the plaintiff, who was injured thereby.

It is to be noticed that the plaintiff was not struck and thrown down by the sudden movement imparted to the cars, but in some unexplained way his foot was caught by the rail and he was thrown forward; the wheels of the cars coming on him and cutting off his foot, while he lay in that position. It is not altogether the same therefore, as if the cars, being suddenly started, bumped into him and threw him down. The accident resulted because he tripped and fell, without which it apparently would not have occurred. But passing this by, if the company, as contended, was bound by long acquiescence to respect this crossing, and after opening the train at it was required, before closing it again, to give reasonable warning, the plaintiff had a right to rely on this, and was entitled to go in between the standing cars, without incurring the danger of being caught by any sudden movement of them. And even though the immediate occasion of the accident was the catching of the plaintiff's foot under the rail, the result is not so remote but that it may be attributed to the neglect of the company, in failing to give due and timely warning, if that obligation in fact rested upon it.

It is the established rule in some jurisdictions that, where a railroad company for a long period of time has permitted the public to cross or travel along its right of way between certain points, it owes the duty of reasonable care to persons so using it, and cannot approach the place with moving trains without giving due and customary warning. 23 Amr. & Eng. Cycl. Law (2d Ed.) 740, 741. This is the rule in Pennsylvania. Taylor v. Delaware & Hudson Co., 113 Pa. 162, 8 Atl. 43, 57 Am. Rep. 446. As it is in New York. Swift v. Railroad, 123 N. Y. 645, 25 N. E. 378. See, also, Harriman v. Pittsburg, etc., Railroad, 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507, and Garner v. Trumbull, 94 Fed. 321, 36 C. C. A. 361. But it is not the rule in New Jersey, where, under such circumstances, persons using the crossing

are regarded as mere licensees, towards whom the railroad owes only the duty of not doing wanton or willful injury. This is well established, and is illustrated by several cases. Thus in Vanderbeck v. Hendry, 34 N. J. Law, 467, the premises where the accident occurred was a lumber yard, which was uninclosed, and where persons were in the habit of crossing from street to street, making use of the passageways left between the lumber. The plaintiff having gone into one of these passageways was injured by the fall of a pile of lumber, which had been piled up in a negligent manner, and it was held that he could not recover. Being on the premises, as it is said, by mere license, and not by invitation, while relieved thereby from responsibility as a trespasser, he assumed the risk of the place, and the business carried on at it, and the owner owed him no duty except to abstain from acts of willful injury. This was reaffirmed in Phillips v. Library Company, 55 N. J. Law, 307, 27 Atl. 478, where, however, in view of the facts of the case, it was held that a different rule prevails, if the entry or use of the land is of right or by invitation of the owner, as distinguished from an entry by license or sufferance; the owner in the former case being under the duty of exercising ordinary care to render the premises reasonably safe, or at least to refrain from any act that will make the entry or use of the premises dangerous. In Devoe v. New York, Ontario & Western R. R., 63 N. J. Law, 276, 43 Atl. 899, the residents along a railroad track which, four years before the accident which resulted in the death of the plaintiff's decedent, was inclosed by a fence along the company's right of way, built a stile over the fence without the consent and notwithstanding the refusal of the company to permit it, so that they might go directly across the tracks to an adjoining station and a street beyond it. The plaintiff's decedent, on her way to school, made use of this stile, and in crossing the tracks of the company, just before she reached the platform of the station, was struck and killed by one of the company's trains; and it was held that mere acquiescence in the passage across the railroad for the benefit or convenience of the parties using it created no duty on the part of the railroad company except to refrain from acts willfully injurious, and, consequently, that there could be no recovery. So in Furey v. New York Central & Hudson River R. R., 67 N. J. Law, 270, 51 Atl. 505, a painter, who was at work assisting to paint a railroad shed, which covered the central portion of a river pier, while on his way to change his working for his street clothes, which he had left in the interior of the building, was injured by the closing together of two freight cars, between which he was passing, within the shed, which were moved by the company without warning. It was contended that by opening the train and leaving spaces between the cars, as was habitually done in the shed, which spaces were used with the knowledge of the company, by men at work on the job, to cross from one side of the building to the other, there was an implied invitation to the men to use these openings, and that a duty devolved on the company in consequence to give warning before closing them. But this was rejected, and it was held that the company was in no way liable, the openings between the cars being varied from day to day according to the exigencies of

the business, as it became necessary to have a car unloaded at one place or another; and that the fact that the plaintiff and others passed through these openings repeatedly without molestation with the knowledge of the company afforded no evidence or encouragement that the company intended them to use them. Such knowledge, it was said, might imply permission, but did not amount to an invitation, without which element there was no duty on the part of the company to give warning, or in fact to do anything, except to abstain from that which was willfully injurious.

The present case does not differ in principle from Pennsylvania R. R. v. Martin, 111 Fed. 586, 49 C. C. A. 474, 55 L. R. A. 361, decided by this court, in which the same rule was enunciated. The plaintiff there was injured by something which fell from a passing train, as he was walking along the right of way of the railroad on a customary path leading from a pottery plant, where he was employed in the city of Trenton, to the platform of an adjoining station. This path had been used for a long time by employés of the pottery plant in going to and from their work without objection on the 'part of the railroad company; and on the occasion in question the plaintiff was going to the station to meet a friend, who was coming in on the train. It was contended that, under the circumstances, he was not on the defendant's right of way by mere sufferance, but by implied invitation; but it was held that the acquiescence of the company in the adoption of the path along the right of way, as a means of going to and from the station, did not invite passengers or others having business there to make use of it, and did not therefore impose upon the company any duty beyond what it owed to a mere licensee. See, also, Sutton v. West Jersey R. R. (N. J. Sup.) 73 Atl. 256; Riedel v. West Jersey R. R. (C. C. A.) 177 Fed. 374.

These cases, which are declaratory of' the local law as established by a long line of decisions of the highest courts of the state, recognized and enforced in this court, are conclusive upon the plaintiff, and require an affirmance of the judgment. Assuming that there was a customary path, leading up on either side to the railroad tracks where the accident occurred, by which the people of the neighborhood were wont to pass across these uninclosed lots, and that this had existed for such a length of time that the company was affected with notice and presumed to acquiesce in it, the use was merely a permissive one, which under the New Jersey law imposed no higher duty than not to do that which was recklessly or willfully injurious. Nor was this duty modified by the fact that, on the occasion in question, the train which was occupying one of the tracks, and which was the cause of the accident, had been opened at the point where the paths converged, which fact cannot be wrested into an invitation or allurement to the plaintiff to go in between the cars in the course of crossing over, so as to require a warning from the trainmen in charge before closing the cars together. The use was still merely a permissive one, and the plaintiff stood in no higher relation to the company than that of a licensee, who took all the ordinary risks incident to the place and the business, among which was the moving or shifting of the cars occupying the

track, back and forth upon it, according as it became necessary. The plaintiff therefore had no case, and a verdict for the defendant was properly directed.

Judgment affirmed.