## Pa. Schuylkill Val. R. R. *v.* Phila. & Read. R. R., Appellant.

[Marked to be reported.]

*Railroads—Exclusive grants—Implied grants—Streets.*

A grant by the commonwealth or by a municipal corporation under authority derived from the commonwealth, is to be taken most strongly against the grantee, and nothing is to be taken by implication against the public, except what necessarily flows from the nature and terms of the grant.

Where the express words of a statute do not grant to a railroad company the right to the exclusive occupancy of a street, such a right cannot be implied, unless the whole width of the street was reasonably necessary for the construction and operation of such road.

*Railroads—Streets—Width of easement—Presumption.*

The presumption that a railroad company has taken the general width of its right of way as specified in the charter, has no application to the surface of public streets, where the words of the charter express, with reference to such streets, nothing more than a right of way.

The right in such case is limited to an occupation reasonably demanded by the transaction of the business contemplated; where, by years of actual use in the business, it has been demonstrated what extent of occupancy is sufficient to accomplish the purpose of the grant, the extent of the use determines the extent of the grant.

A railroad company was authorized by its charter to use a public street

At the time of the location and construction of the railroad, there were no outside facts pointing to a necessity for more than one track on the street. The company laid one track and continued to use it for twenty years. *Held,* in a controversy with another railroad company over the occupancy of the remaining portion of the street, that the power under the grant was exhausted, not by delay in appropriation, but by the full exercise of the power in the beginning.

*Exclusive grants—Acts of March* 20, 1860, *and March* 29, 1871.

The act of March 20, 1860, P. L. 471, authorizing a railroad to construct its road " across or along such streets as it might find expedient to use," and the act of March 29, 1871, P. L. 466, authorizing the use of so much of certain streets as might " be necessary for the construction of their tracks, sidings and branches," do not express a right to the exclusive occupancy of the streets.

Allegheny v. Ohio & Penna. R. R., 26 Pa. 355; Phila. & Reading R. R. v. Berks Co. R. R., 2 Woodward, 361, applied; Jones v. R. R., 144 Pa. 629, distinguished.

*Occupancy of street longitudinally—Act of April* 4, 1868.

Not decided whether a railroad company incorporated under the act of April 4, 1868, P. L. 62, has the right to occupy any street longitudinally.

Argued Feb. 28, 1893. Appeal, No. 196, Jan. T., 1893, by defendant, from decree of C. P. Berks Co., Equity Docket, 1884, No. 341, in favor of plaintiff, on bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Bill and cross-bill to restrain plaintiffs and defendants from occupying portions of streets. (For appeal from preliminary injunction, see 16 W. N. 165.)

The case was referred to Henry C. G. Reber, Esq., as master, who, after reciting the charter of the West Reading Railroad Co., act of March 20, 1860, P. L. 471, of the Berks Co. Railroad Co., acts of March 29, 1871, P. L. 466, and April 22, 1873, P. L. 834, both of which roads were afterwards acquired by appellant, and the charter of appellee, act of April 4, 1868, P. L. 62, found among other facts those recited in the opinion of the Supreme Court. The master recommended that the bill and cross-bill be dismissed. Exceptions were dismissed by the court in an opinion by ENDLICH, J.

*Errors assigned* were dismissal of exceptions and decree, quoting them respectively.

*Geo. F. Baer, Philip S. Zieber* and *Jefferson Snyder* with him, for appellants.– Appellants, possessing all the rights, powers and franchises of the West Reading Railroad Company, and of the Berks County Railroad Company, had, by force of the charter privileges, ordinances of the city of Reading and by actual appropriation for railroad purposes, of the same portion of Front and Canal streets on which appellee located and has now constructed its branch, the right to use that portion of the streets for railroad purposes, and this right was paramount to that of appellee, and could not be legally invaded and destroyed by appellee : Western R. R. v. Johnston, 59 Pa. 294 ; P. S. V. R. R. v. Reading Paper Mills, 149 Pa. 18 ; 1 Redfield on Railways, p. 306 ; Philadelphia & Trenton R. R., 6 Whart. 46 ; Danville R. R. v. Com., 73 Pa. 38 ; Duncan v. P. R. R. 94 Pa. 438 ; Packer v. R. R., 19 Pa. 211 ; Pa. R. R. Co.'s Ap., 93 Pa. 150 ; Jones v. R. R., 144 Pa. 629.

A railroad company, organized under the act of 1868, has no right to occupy a street longitudinally, which had theretofore been appropriated, with the consent of the city, by an older railroad company : Pa. R. R. v. Belt Line R. R., 149 Pa. 218 ; Jones v. R. R., 144 Pa. 629 ; Pierce on Railroads, 247 ; People's Pass. Ry. v. Baldwin, 14 Phila. 231 ; Musser v. Fairmount & Arch St. Ry., 5 Clark, 466 ; P. W. & B. R. R. v. Williams, 54 Pa. 103 ; Black v. H. & P. R. R. R., 58 Pa. 249 ; West Phila. Pass. Ry. v. Dougherty, 3 W. N. 62.

Appellee could not lawfully construct its branch railroad, longitudinally, on Front and Canal streets, crossing at grade the numerous branches and sidings of appellant, and cutting off appellant from access to new business on the west side of Front and Canal streets : Pittsburgh Junction R. R. Co.'s Ap., 122 Pa. 511 ; Sharon Ry. Co.'s Ap., 122 Pa. 533 ; L. S. & M. S. R. R. v. N. Y. C. & St. L. R., 8 Fed. R. 858 ; Packer v. Sunbury R. R., 19 Pa. 217 ; White v. C., St. L. & P. R. R., 43 Am. & Eng. R. R. Cases, 164.

Appellee has no right to cross the main tracks of the West Reading Railroad and Berks County Railroad at grade for the purpose of reaching a lot on which appellee has now built a second freight station : Perry Co. R. R. Extension Co. v. Newport & Sherman's Valley R. R., 150 Pa. 193.

*Cyrus G. Derr*, for appellees.—The general railroad laws of Pennsylvania do not, as against the commonwealth, give a railroad company constructing upon a street in a city a right of way upon the said street commensurate in quality and extent with that acquired by condemnation over private lands. The company's right to construct upon the highway is limited to the line of railway, being that used for passage merely : Com. v. Erie & N. E. R. R., 27 Pa. 354; Pa. R. R. Co.'s Ap., 93 Pa. 150; N. Y. & H. R. R. R. v. 42d St. & G. S. F. Ry., 50 Barb. 285 ; Phila. & Gray's Ferry Ry. Co.'s Ap., 13 W. N. 105; Allegheny v. Ohio & Pa. R. R., 26 Pa. 355; Pa. Sch. Val. R. R. v. Reading Paper Mills, 149 Pa. 18; Neitzey v. Baltimore & Potomac R. R., 26 Am. & Eng. R. R. Cases, 556; McQuaid v. Portland & V. R. R., 40 Am. & Eng. R. R. Cases, 315 ; Pierce on Railroads, 154; Charles River Bridge v. Warren Bridge, 11 Peters, 420; North Penna. R. R. v. Stone, 3 Phila. 421; Com. v. Erie & N. E. R. R., 27 Pa. 339; Case of Phila. & Trenton R. R., 6 Whart. 25 ; Snyder v. Penna. R. R., 55 Pa. 340. A doubtful charter does not exist: Penna. R. R. v. Canal Commissioners, 21 Pa. 22; Allegheny City v. Ohio & Penna. R. R., 26 Pa. 355; Lance's Ap., 55 Pa. 16 ; Packer v. Sunbury & Erie R. R., 19 Pa. 218; Com. v. Erie & N. E. R. R., 27 Pa. 351; Attorney General v. Lombard & S. St. Pass. Ry., 1 W. N. 489; Com. v. Central Pass. Ry., 52 Pa. 506.

Appellants have, by none of the statutes under which they claim, been invested with a right to the entirety of the streets in question and have not acquired and do not possess any title to the parts of the streets whereon appellees' branch and main line are constructed.

Where the charter confers a right to build branch roads, the presumption follows that the company has the same right to condemn lands whereon to construct such roads, as in the case of the main line : 1 Wood's Ry. Law, p. 544.

The relative importance of the main line and the branch are not to be measured by their length respectively, under the peculiar circumstances of the case: Mayor etc. of Pittsburgh v. P. R. R., 48 Pa. 359; Volmer's Ap., 115 Pa. 166 ; Getz's Ap., 10 W. N. 453.

The summary allowance and regulation of a grade crossing by an interlocutory decree, is in accordance with the practice

of the courts : Balt. & Phila. R. R. v. P. W. & B. R. R., 17 Phila. 396 ; Phila. & Erie R. R. v. Catawissa R. R., 1 Walker, 81 ; Pa. Sch. Val. R. R. v. P. & R. R. R., 151 Pa. 402.

OPINION BY MR. JUSTICE DEAN, October 2, 1893 :

The contention here arises from the conflicting claims of two rival railroads, plaintiffs and defendants, to the occupancy of Front and Canal streets in the city of Reading.  As neither denies the power of the other, under its corporate grant, to occupy, with consent of the city councils, streets of the city, it would serve no useful purpose for us to raise an issue not raised by the pleadings, or to discuss a proposition not necessary to a decision of the cause.  For that reason, we will not attempt to answer the question, "has a railroad company incorporated under the act of 1868 the right to occupy any street longitudinally ?" so ably treated by the learned judge of the court below. It will be time enough to pass on that, when the rights of parties to a cause depend on an answer to it.

Assuming, then, as these parties practically have assumed, from the commencement of this litigation down to final hearing, that it was not, in either, a usurpation of power not conferred in the grant, to occupy the streets of Reading for railroad purposes, then, how far are they to be restrained or restricted in the exercise of the power on these particular streets ?

As to the prior grants under which defendants claim, those to the West Reading Railroad Company in 1860, and to the Berks County Railroad in 1871 and 1873, they do not, in express terms, confer the exclusive right to all the surface of these streets.  The first, gives the right to select such route as may be deemed best, "across or along such streets as it might find expedient to use," subject to all the provisions of the general railroad act of 19th of February, 1849 ; and before exercising this right, the consent of the city must be first had.  The second, gives authority to construct a railroad to and through the city ; also, a single track on these streets, subject to the consent of the city councils, who consented to the occupancy of so much of Canal and Front streets as might "be necessary for the construction of their track, sidings and branches."  The words of the grants, certainly, do not express an exclusive right to the occupancy of the streets.  If not expressed, is it to be implied ?

The grant was to a private corporation, of a right upon the surface of public streets. In such cases, there has never been any relaxation or modification of the rule laid down by this court in Allegheny v. O. & P. R. R. Co., 26 Pa. 355: "A grant by the commonwealth or by a municipal corporation under authority derived from the commonwealth, is to be taken most strongly against the grantee, and nothing is to be taken by implication against the public, except what necessarily flows from the nature and terms of the grant." It would add nothing to the force of this statement of the law to cite the cases which, in the last thirty-five years, have followed it. It is the settled law, pointedly applicable to the facts before us. The nature and terms of this grant were to construct and operate a steam railroad upon a street sixty feet wide in a large city. If to construct and operate such a road, the whole width of the street was reasonably necessary, then the exclusive right to the whole street would necessarily flow from the nature and terms of the grant. Whether the whole of the street was necessary to the construction and operation of defendants' road, is a question of fact determinable from evidence. This is the finding of the master on the testimony: " Front and Canal streets are sixty feet wide; along the western side of these streets, at the time of filing plaintiff's bill, there was a space affording room for one additional track; that it is practicable to operate two rival roads upon these streets, and that plaintiffs' railroad and defendants' railroad have already existed on these streets about seven years, have been operated for nearly six years, and have in such operation not materially interfered with each other. That defendants have ample facilities upon these streets, and have been able, in addition to the transaction of their own business thereupon, to accommodate the Wilmington & Northern Railroad Company with the use of their track upon Front and Canal streets, having for many years allowed them to run their passenger trains upon these streets."

It will be noticed, that the findings here stated are not opinions, the soundness of which can be tested by the judgment of the court, when the grounds of the opinion are given. Unless the witnesses before the master falsified, these facts were established: 1. There was an open space at the time plaintiffs located their track, along the western side of the streets, not physically

in possession of defendants, of sufficient width for the construction of another track. 2. That part of the streets on which defendants' tracks were laid was of sufficient width, at least during the preceding years, for the transaction of their business.

As, then, the words of the grant did not expressly concede the exclusive right to the streets for their full width, and the facts show, by actual use, that defendants' steam railroad can be operated on much less than sixty feet, there is no necessary implication, from the nature of the grant, that defendants by the construction of their road upon a part acquired a right to the whole.

It does not follow, from what we have said, that in the interpretation of grants giving to railroads the right of passage on streets, the implication necessarily is, that the right is limited to one track or even two. The right is limited to an occupation reasonably demanded for the transaction of the business contemplated; where, by years of actual use in the business, it has been demonstrated what extent of occupancy is sufficient to accomplish the purpose of the grant, the extent of the use determines the extent of the grant. Had defendants been in actual occupancy of the whole surface of these streets with tracks, at the time plaintiffs sought to lay a track on the western side, the question presented would have been a very different one; the probable inference, then, would have been, they were in the enjoyment only of that to which, from the nature of the grant, they had the right.

There can be no constructive appropriation of the whole of a public street, under a right of passage, which will be effectual to bar the right of the public to the part not in actual use for the purpose granted. The presumption that the corporation has taken the general width specified in its charter, has no application to the surface of public streets, where the words express, with reference to such streets, nothing more than a right of passage. Here, the words are "across or along such streets," and the right to construct its road "to and through the city of Reading."

In the city of Allegheny v. Ohio & Pa. R. R. Co., already cited, the court, after stating how much more favorable to the railroad company is the implication, where the grant is through land, either unoccupied or sparsely settled, say: "But the grant

of a right of way through a small strip of ground designed for public uses in a densely populated city stands upon a different footing. Under such circumstances, it is not reasonable to suppose that anything further was intended by either party than to contract for so much ground as shall be necessary for the line of railway alone, and that the ground so granted shall be used only for the ordinary purposes of passing and repassing thereon."

While in the case just cited the grant was, by contract, of fifty feet, through a public common belonging to the city, the slight difference in the facts, between that case and this, makes no change in the applicability of the principle ; both are grants of a passage over a surface, theretofore owned and enjoyed by the public, and thereafter, both, by implication, excluded the public from so much as passed by the grants. The very point involved was passed upon by the late Justice WOODWARD, then sitting in the common pleas, in a case in which the present defendants were plaintiffs, against the Berks County Railroad Company, defendants, reported in 2 Woodward, 361. In the course of that opinion, he says : " The grant was not of the streets, nor of a territory sixty feet in width, but of the right of way for a railroad. The company's interests are not to be measured by what they may have claimed or contemplated, but by what they did. The portions of the streets which they did not appropriate for the purposes of their road, belong to the plaintiffs, and are subject to their control, no more than the dozen other streets which the West Reading Company might have selected for their line, under their charter, and which they did not appropriate at all."

The decision of this court in Jones v. Railroad Company, 144 Pa. 629, is not a departure from the principles here relied upon. The facts in that case are wholly different, and what is there said by our Brother McCOLLUM, must be understood as applicable to the facts in that case. There the road was elevated twenty-three feet above the street; the right of the public to the surface was not disturbed ; the contention was not between the railroad company and the public, or between the company and the subsequent grantee of the public, but between a lot owner and the company, which, under a right of way for its

elevated structure, had designated part of the lot for future occupancy, and refused to disclaim the right thereto.

It is argued by appellants, that this interpretation of the law, limits the occupation, no matter what may have been intended by the grant, to only so much of the surface of the street as was taken at the very beginning, and, although the exclusive right to the whole of the street may appear, the company must at once cover it with tracks, under the penalty of a forfeiture. The conclusion deprecated does not follow a proper invocation of the principle stated. There may be grants of a right of passage to a railroad company, which, from circumstances de hors the written authority, such as the large amount of business to be transacted, the number of tracks outside the city, the terminal points, and other facts, would warrant the implication that surface for more than one track was necessarily intended; it would not follow, in such case, that, immediately after one track was down and a train ran over it, the power to occupy under the grant was exhausted; there would be a reasonable time for the exercise of the right of physical occupancy implied. But the case in hand is, in no aspect of it, the one supposed. The grant to the West Reading was to a road five miles in length, and by actual construction only two miles; after consolidation, it became a mere siding of defendant's greater line; the city ordinance giving consent, stipulated it should conform to the grade of the street; that is, a steam road should adapt its grade to one for wagons. The obvious inference is, that one track would be sufficient for the right of passage for such a road.

The Berks County Railroad, to whose rights defendants also succeeded, by the city ordinance had the right to but one track, and this was laid on the eastern side of the street about the year 1873, although an unsuccessful attempt had been made before that time to lay it on the west side, covering the part now in controversy. Therefore, at the beginning, when the first appropriation under the grants was made, there were no outside facts pointing to a necessity for more than one track under a right of passage; having laid that one track, in the one case, ten, and in the other twenty years before the controversy, the power under the grant was exhausted, not by reasonable delay in appropriation, but by its full exercise. No extension

of time for further occupancy could have enlarged the scope of the grant. So, then, there is no implication that a right of passage by more than one track was intended, and if there were, the laying of but one track could not have excluded, forever, the public or the public's grantees from the unoccupied part, without a reversal of well settled rules of construction of corporate grants of public rights.

What we do hold in this case, is :

1. The necessary implication from defendants' grant is, as against the public, a right of passage, only, on the streets in question.

2. The facts show, this right was fully enjoyed for many years by an actual occupancy of only part of the surface of these streets, therefore that extent of occupancy is all that is necessarily implied from the nature and terms of the grant.

3. Plaintiffs' location, although on the same streets, in no way interferes with or obstructs defendants in their right of passage under their prior grant and locations.

Our opinion necessarily overrules the other assignments of error. Therefore, the decree of the court below is affirmed, and the appeal is dismissed at costs of appellants.

[Marked to be reported.]