Anna D. Johnston, Harvey Childs, Jr., and William E. Littleton, Executors and Trustees of the Estate of Ross Johnston, deceased, and Mary E. Sloan, Appellants, *v.* James D. Callery.

[Marked to be reported.]

*Railroads—Location—Servitude—Evidence.*

The selection and adoption of a line by the directors of a railroad fast-ens a servitude upon the property affected thereby and so takes from the owner and appropriates to the use of the corporation.

When engineers to survey the route of a railroad have returned the protracted surveys of the line or lines run, to the office of the company, and the survey thus made has been formally adopted and declared to be the location of the road, that constitutes and completes the fact of location.

The plan or map of a survey of the route of a railroad returned by the company's engineers to its office is the best evidence on the question of location of what has been done by them.

The title of the owner cannot be completely divested until compensation is made or security given; but as to third persons the adoption of a definite location is sufficient to give title to the railroad company.

*Vendor and vendee—Incumbrances—Railroads—Servitude—Location—Evidence.*

Where the defense to an action for the purchase money of land is that the stipulation for a title in fee clear of all incumbrances has been violated, a judgment and verdict for defendant will be sustained where the secretary and treasurer of a railroad company testified that prior to the contract, by a formal resolution of the board of directors of his company, a branch line of railroad had been located across the land in question, in accordance with a plan made by the engineers of the railroad, referred to in the resolution of the directors, and produced by the witness in court. In such a case it is not necessary to produce the engineers who actually made the plan; nor is it necessary to show that the owners of the land were notified of the action of the directors; nor is it material that the damages had not been paid or secured to the owners at the time the plaintiffs contracted to sell to the defendant.

Argued Nov. 1, 1897. Appeal, No. 139, Oct. T., 1897, by plaintiffs, from judgment of C. P. No. 3, Allegheny Co., May Term, 1895, No. 248, on verdict for defendant. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for purchase money on an agreement to sell real estate.

The case was previously reported in 173 Pa. 129.

The facts appear by the opinion of the Supreme Court.

Plaintiffs' points and the answers thereto were as follows :

1. The title of private owners to land cannot be incumbered or divested by corporations exercising the right of eminent domain, until actual payment of damages to the owner has been made or security given. *Answer :* This point is refused. [1]

2. The mere survey of the line for the railroad across plaintiffs' property and adoption of the line surveyed as a location for a railroad by the Pittsburg and Connellsville Railroad Company, without notice to the plaintiffs, and without entry upon the lands, did not impose any easement or incumbrance upon the property. *Answer :* This point is refused. [2]

3. A survey of a line for a railroad across the plaintiffs' property by the Pittsburg and Connellsville Railroad Company, and the adoption of the line surveyed as the location of the road, without the knowledge of the plaintiffs or entry on the land, vested no title in the Pittsburg and Connellsville Railroad Company to any part of the plaintiffs' land. *Answer :* This point is affirmed ; but while the facts as stated would vest no title in the railroad company, they would consitute an incumbrance upon the title of the plaintiffs. [3]

4. The rights and liabilities of the parties to this case must be determined as of the date of their contract, May 2, 1893, and the evidence in this case does not show that at that time the Pittsburg and Connellsville Railroad Company had acquired any right or title to the land to be conveyed. *Answer :* This point is refused. If under the evidence the jury find as a fact that prior to May 2, 1893, which is the date at which the rights of the parties to this controversy must be determined, the railroad company had located and adopted a line for its road over the land in question, then the railroad company would have a conditional title ; that is, it would have the right to proceed to take the land upon the payment of the damages ; it would have the right at once to institute proceedings for the purpose of ascertaining the amount of the damages. [4]

5. The action of the board of directors of the Pittsburg and Connellsville Railroad Company in adopting the resolution of

April 4, 1892, did not impose any incumbrance upon the plaintiffs'. property or vest any right in the railroad company to the land. *Answer :* Whether or not the line of railroad indicated on this map and referred to in the resolution as adopted for the line of the branch road crossed this land in question, in other words, whether or not the line adopted was located over this land, is a question of fact. If you find that the line adopted by this resolution and referred to in it, as a fact, ran over this land, then the adoption of that line would constitute an incumbrance upon the plaintiffs' title. It would not vest the right to the land in the railroad company, but it would give them an inchoate title, that is, it would give them the right to proceed to ascertain the damages or to secure payment of them to the owner, and take possession of the land and construct its line. And if such a location of a railroad existed over the land at the time this agreement was made on May 2, 1893, then it would be such an incumbrance upon the land as would involve a breach of the agreement entered into by the parties. [5]

6. Under all the evidence, the jury must find for the plaintiffs. *Answer :* Refused. [6]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*George E. Shaw* and *J. H. Reed*, with them *P. C. Knox*, for appellants.—No title is acquired by a railroad company before payment of damages or security given, and entry before payment or security given is a trespass for which ejectment will lie : McClinton v. R. R., 66 Pa. 404 ; Dimmick v. Brodhead, 75 Pa. 464 ; Penna. Co. v. Eby, 107 Pa. 166 ; R. R. v. Cooper, 105 Pa. 239 ; W. P. & B. R. R. v. Warrell, 122 Pa. 613.

The estate of the owner is not divested until the bond is duly entered or the land paid for : B., N. Y. & P. R. R. v. Harvey, 107 Pa. 319 ; W., P. R. C. Co. v. Johnson, 59 Pa. 290.

When security is given, the owner's title is divested, his right of property extinguished, and he can look only to his bond for compensation : Fries v. R. R., 85 Pa. 73 ; Hoffman's App., 118 Pa. 512.

The adoption of a location, followed by staking out the route upon the ground, gives the company no right or title in the

land: Gilmore v. Pgh., etc., R. R., 104 Pa. 275; Lafferty v. R. R., 124 Pa. 297.

An engineer may make explorations in advance of a location, or he may re-mark the line or adjust the grades, after the adoption of a location, but an engineer alone cannot locate a railroad so as to give title to the company that employs him: Williamsport R. R. Co. v. R. R. Co., 141 Pa. 416.

When by transfer of title, pending the location and construction of a railroad or otherwise, it has become a question as to whom the damages were payable, it has always been held that the damages belonged to the owner at the time of entry: McFadden v. Johnson, 72 Pa. 335; Warrell v. R. R., 130 Pa. 600; Lawrence's App., 78 Pa. 365; Davis v. Titusville, etc., Ry., 114 Pa. 308; Blackiston's App., 81* Pa. 353.

*Wm. D. Evans*, with him *Geo. C. Wilson*, for appellee.— The act of location with reference to a railroad company is defined " to be an appropriation of private property by virtue of the right of eminent domain with which the state has invested the railroad company, either by the act of incorporation or by virtue of general laws.

As against the owner, the corporation can acquire only a conditional title by its act of location, which ripens into an absolute one upon making compensation. In Hagner v. Pa. Schuylkill Valley R. R., 154 Pa. 455, the question was solely between the owner of the land and a company having a located, but not constructed, line of railway, and the very language used in Williamsport R. R. Co. v. R. R., 141 Pa. 407, was affirmed by this Court in a per curiam opinion. In P., V. & C. Ry. Co. v. Com., 101 Pa. 192, the same question arose between a municipal corporation as the owner of a street, and a located but not constructed line of railway.

Cases where municipalities by ordinance direct the location and opening of streets under the power of eminent domain are exactly analagous to this case, and in these cases it has been held that the existence of a street legally laid out, but not opened for use, across a lot, is an incumbrance upon so much of the lot as it covers, sufficient to excuse the purchaser from performing on his part, if it was not disclosed to him when the bargain was made: People's Savings Bank of Pitts. v. Alexander, 3 Cent. Rep. 388.

Immediately upon the location being made the owner or the company may proceed at once to secure an ascertainment of damages; and while it is true the owner's title is not divested until compensation made or security given therefor, yet when the railroad has been located, the land has been taken and appropriated for public use, and the right of the landowner to sue for his damages, complete—he may recover all which may be caused by the location—and by the subsequent construction : Williamsport R. R. v. R. R., 141 Pa. 407 ; Wadhams v. R. R., 42 Pa. 310 ; Beale v. R. R., 86 Pa. 509 ; Bate v. R. R., 1 Mont. Co. Ct. Rep. 47 ; Neal v. R. R., 2 Grant, 137 ; Rawle on Covenants for Title, sec. 79 ; Beach v. Miller, 51 Ill. 206 ; Barlow v. McKinley, 24 Iowa, 70 ; Kostendader v. Pierce, 37 Iowa, 645 ; Gerald v. Elley, 45 Iowa, 322 ; Butt v. Riffe, 78 Ky. 352 ; Wilson v. Cochran, 46 Pa. 232.

OPINION BY MR. JUSTICE GREEN, January 3, 1898 :

When this case was here before, 173 Pa. 129. it was upon the sufficiency of an affidavit of defense to prevent judgment.   The statement of cause of action claimed judgment for the amount of the purchase money stipulated in the agreement for the sale of the land, and the affidavit of defense claimed that the stipulation of the agreement which provided for a title clear of all incumbrances had been violated, and that the plaintiffs were unable to convey such a title.   The incumbrance alleged in the affidavit was that which was created by the survey and location of a branch railroad of the Pittsburg & Connellsville Railroad over the land in question, at a time anterior to the execution of the contract of sale.   All the particulars of the survey and location were set forth in the affidavit, including a formal adoption of the location by the resolution of the directors of the railroad company of April 4, A. D. 1892.   The affidavit also set forth a notice from the counsel of the railroad company by letter dated May 19, 1893, to the effect that the company had surveyed and located the said branch railroad, sometime before, over the property, and that if the defendant purchased the property he would have to take it subject to the right of the railroad company to appropriate the right of way for the road over the land.   The plaintiffs having entered a rule for judgment notwithstanding the affidavit, the court below discharged the rule, whereupon the

plaintiffs took an appeal to this Court. But we sustained the court below and practically said that if on the trial, the facts set out in the affidavit were established by testimony, the defendant would have made out a good defense. On the trial the defendant gave evidence to prove all the matters alleged in the affidavit of defense, and so far as we can discover there was no lack of testimony as to any of them. The case was submitted to the jury on the question whether there had been an actual location of the railroad over the property prior to the agreement of sale, and the court ruled that if there had been it constituted an incumbrance on the plaintiffs' title, and the defendant would not be bound to take the land. So far as the evidence is concerned we do not understand that there is any dispute, and the learned counsel for the appellants concede that such is the case, in their printed argument. Their contention seemingly is that there was no evidence of a survey or any entry on the ground having been made prior to the contract, and that no notice had been served on the owners, and that on May 1, 1893, there was nothing but a paper location, evidenced only by the passage of a resolution on April 4, 1892, unknown to all but the officers of the company. As to this resolution they contend it was rescinded by a later resolution, adopted on February 20, 1895, and they argue from these premises that no incumbrance was imposed upon the property at the date of the contract.

In view of the testimony taken on the trial, and of the decisions of this Court as to what constitutes a good location, we cannot consider these contentions as at all tenable. We have so recently defined what is a good location of the route of a railroad that a brief citation from our latest decision on the subject, will be sufficient. In the case of Williamsport R. Co. v. Phila., etc., Railroad Co., 141 Pa. 407, our Brother WILLIAMS, delivering the opinion said : " The successive steps contemplated by the act of 1849 and subsequent legislation, as necessary to vest a title to the roadway in the corporation, are these :

" 1. A preliminary entry on the lands of private owners for the purpose of exploration. This is made by engineers and surveyors who run and mark out one or more experimental lines, and who report their work with such maps and profiles as may be necessary to present it properly to the company that employs them.

" 2. A selection and adoption of a line, or one of the lines so run, as and for the proposed railroad. This is done by the corporation, and it requires the action in some form of the board of directors. This makes what was before experimental and open, a fixed and definite location. It fastens a servitude upon the property affected thereby, and so takes from the owner and appropriates to the use of the corporation.

"3. Payment to the owner for what is taken and the consequences of the taking, or security that it shall be made when the amount due him is legally ascertained.

" The title of the owner is not divested until the last of these steps has been taken, (citing authorities). As against him the corporation can acquire only a conditional title by its act of location, which ripens into an absolute one upon making compensation. As to third persons and rival corporations, however, the action of the company adopting a definite location is enough to give title. . . . The act of location is at the same time the act of appropriation. The space covered by the line as located is thereby seized and appropriated to the purposes of the construction and operation of the railroad, by virtue of the power of eminent domain, and nothing remains to be done except to compensate the owner. After the act of location by the company, the owner or the company may proceed at once to secure an ascertainment of damages."

It will be observed now, that the selection and adoption of a line by the directors "fastens a servitude upon the property affected thereby, and so takes from the owner and appropriates to the use of the corporation." All of this was repeated and reaffirmed in the opinion of Mr. Chief Justice STERRETT, in Johnston v. Callery (this same case), 173 Pa. 129.

Let us now see what was the action of the company as to the adoption and location of the route in this case. Mr. J. B. Washington, the secretary and treasurer of the company, was examined on the trial, and was asked, " Q. Have you in your possession any plan of that company showing the location of a branch railroad from a point at or near the crossing at Glenwood down in the direction of Marion station? A. I have. Q. Will you produce that plan please? (Plan produced by the witness.) Q. By whom was this plan prepared? A. By the chief engineer of the company. Q. Now where does that line of railroad cross

this property that is now in question? (Witness indicates on plan.) Q. What action, if any, was taken by the board of directors with respect to that adopted location? A. There is the adoption by the board on the plan, with the seal. Q. By whom was that adoption? A. Adoption by the board of directors. Q. And entered upon the plan by whom? A. That is my hand-writing. . . . . Q. Will you look at the meeting of the board of directors held on April 4, 1892? A. I have that. Q. Now will you give us that minute? A. 'Resolved that this company survey, locate and construct a branch railroad of one or more tracks from a point on the main line of the Pittsburg and Connellsville railroad, at or near the crossing of Second Ave., in Glenwood, twenty-third ward, city of Pittsburg, and thence extending to a point of connection with the said main line at a point near Marion station, west of Laughlin street, in the development of the territory along the Monongahela river lying between said points, and furnishing an outlet for the productions thereof; and be it further resolved that the survey of said branch heretofore made by the engineers of this company, the centre line of which is shown upon a plan thereof presented to the board with these resolutions, be accepted and adopted as the location between the points aforesaid of said branch railroad, and that the president be authorized and is hereby directed to do all things necessary at once to put said line under construction upon said survey as aforesaid, with a right of way of the width of sixty feet; and be it resolved further that the secretary be directed to cause a map or plot showing accurately a survey of the line of said branch to be filed in the office of the secretary of state.' "

It will thus be seen that the resolution of April 4, 1892, recites that a survey of the route had been previously made, and that a map or plan thereof was then before the board, and further that, "a map or plan showing accurately a survey of the line " should be filed in the office of the secretary of state.

The witness was asked on cross-examination, " At the time the resolution of the board of directors was passed that you have just read, there had been no map or plot showing accurately the survey of the line of the branch road made? A. There was a map presented to that meeting and adopted, a copy of which was filed in the office of the secretary of the common wealth. Q. Now was that this map? A. Yes, sir."

Subsequently the witness produced the original map that was before the board of directors. He was asked, " Have you the plan with you now that is referred to in that resolution of April 4, 1892? (Witness produces plan which is marked exhibit No. 3.) Q. Will you indicate what marks the line of the located railroad upon that plan? A. This is the property and this is the line. (Indicating.) Q. I wish you would state when this particular plan was adopted by the board of directors. A. April 4, 1892. Q. Is that the plan referred to in the resolution that you read? A. Yes, sir. Q. Is this the plan referred to in the resolution of the board of directors dated April 4, 1892? A. It is.".

While it is true that the surveyors or engineers who actually ran the line on the ground·were not produced, the result of their work, to wit: the plan showing the survey, was produced, and was acted upon, and the line thus surveyed was adopted as the line of the road. We do not understand that anything more than this is required. When the engineers have returned to the office of the company, the protracted surveys of the line or lines run, and the survey thus made has been formally adopted and declared to be the location of the road, that constitutes and completes the fact of location. It certainly cannot be necessary for the company to keep the original engineers who did the work on the ground always in sight, so as to produce them in court years after the work was done, in order ·to testify to their work whenever the fact of the location may be questioned. The plan or map of the survey is the best evidence of what was done, and affords the strongest implication that the work was done. Moreover, the question whether the actual location had been made, was a question of fact, and was submitted to the jury, and was found in the affirmative, and there was not a particle of testimony in the case to impeach the fact of the survey, or the correctness of the finding of the jury.

The contention that because the damages had not been adjusted and paid or secured, at the time of the contract, therefore no title had yet been acquired by the company is of no importance. If the inchoate right of the company was complete it " fastened a servitude " upon the property, and therefore became an incumbrance upon the title. The owners were still entitled to prosecute their claim for damages, and to receive the dam

ages when assessed, and in point of fact such proceedings were commenced in October, 1893, at the suit of the company, and were participated in by the defendants, in that proceeding, who are the plaintiffs, in this. The record does not show whether they have been completed, nor is it necessary that it should do so. The contention that no notice of entry or survey on the property had been served upon the owners is of no consequence, because such notice is not an essential prerequisite to a valid location. As to the contention that the location of April 4, 1892, was rescinded by the resolution of February 20, 1895, and the route thereby changed, it was abundantly proved that no change was made in the location through the plaintiffs' land, but only at another point, called Laughlin. Moreover it was fully proved that the road was actually built on the plaintiffs' land upon the precise location made in April, 1892.

As the case was submitted to the jury on the facts set forth in the affidavit of defense of which we have previously approved as being sufficient, if true, to make out a good defense, and the jury has found those facts, there seems to be nothing on the record that demands further consideration. It was shown on the trial that the property was bought for the Second Avenue Traction Co. to erect a power house thereon, and for that purpose it was very desirable to have the building on the bank of the river. The location of the railroad cut off such use of the ground and rendered the land undesirable. As there was no doubt of the railroad company's right to proceed to the ascertainment of damages under its location, and to erect the road on the route adopted, it is difficult to understand how, or in what sense, the adoption of the survey and the location of the road on that line was not an incumbrance on the title. With this servitude fastened upon it, and holding it for the benefit of the railroad company, the purchaser could not get the title he contracted for, and therefore his contract rights as a purchaser were seriously affected by the superior rights of the company. On this subject our Brother, the Chief Justice, said in this very case, 173 Pa. 129, quoting from the Williamsport case, " The act of location is at the same time the act of appropriation. The space covered by the line as located is thereby seized and appropriated to the purposes of the construction and operation of the railroad by virtue of the power of eminent domain, and nothing

remains to be done except to compensate the owner. After the act of location by the company, the owner or the company may proceed at once to secure an ascertainment of damages." In the court below the case was tried strictly upon these principles, and we discover no error in the rulings of the court. The assignments of error are all dismissed.

The judgment is affirmed.