Powell *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Passenger—Station.*

The relation of carrier and passenger begins as soon as one intending in good faith to become a passenger enters in a lawful manner upon the carrier's premises to engage passage, and that relation continues to exist until the passenger has been made aware of his arrival at the place of destination and has had a reasonable time to alight from the car and to leave the premises of the carrier.

Where a passenger after alighting from a train crosses the tracks from a station on one side of the line to a station on the other side where she intends to meet a friend waiting for her, and in so doing she is compelled to go over a crossing of a highway, she does not cease to be a passenger merely because she has passed over such highway.

Where a passenger after alighting from a train enters the station for the purpose of waiting for a friend who was to meet her, and not for the purpose of using the station as a waiting room for a street railway company, she is entitled to use the station as a passenger for a reasonable time, and what is a reasonable time is a question of fact to be determined by the jury; and if after leaving the station she is compelled to walk along an insufficiently lighted path, torn up and obstructed, and very close to the tracks, and she is injured by a passing express train, she may recover for the injuries which she sustained

if she used reasonable care to avoid danger. In such a case the company's negligence, and the plaintiff's contributory negligence are questions for the jury.

Argued Feb. 11, 1908. Appeal, No. 381, Jan. T., 1907, by defendant, from judgment of C. P. Bucks Co., May T., 1906, No. 14, on verdict for plaintiff in case of Elizabeth H. Powell v. Philadelphia & Reading Railway Company. Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before STOUT, P. J.

At the trial the jury rendered a verdict for the plaintiff for $2,730.10.

On a rule for a new trial and judgment non obstante veredicto the court filed an opinion in which the facts were stated to be as follows :

At about 6:40 o'clock on the evening of November 29, 1905, the plaintiff, Elizabeth H. Powell, accompanied by her friend, Miss Gaunt (now Mrs. Engle), arrived at Langhorne station on a train from Philadelphia. They both alighted in safety on the temporary cinder walk or platform on the south side of the railroad, then operated as a double track road, running at that point from west to east from Philadelphia to New York city. They were on their way to visit at the house of Edward Palmer, who lived at Langhorne, north of the railroad, and who was to meet them at the station with a carriage. The passenger station house was on the north side of the railroad. It had been located for many years at the foot of Station avenue, a street running in a northerly direction to Langhorne borough. About three weeks prior to this date the station had been moved about 125 feet to the east towards Bellevue avenue, the main street crossing the railroad at about right angles, and running in a northerly direction into Langhorne borough. On the north side of the railroad the Langhorne and Bristol street railway ran from Bellevue avenue in a westerly direction along or near the defendant's land, and parallel with its tracks, for several squares to the west of the passenger station, where it crosses the railroad tracks to the south by an overhead bridge. The street railway stopped

its cars at the foot of Station avenue, opposite the railroad station, to let off and take on passengers.  The street railway maintained a small platform at this place for the accommodation of its passengers, but no waiting room.  Street car passengers intending to take the railroad trains used the railroad's waiting rooms until the departure of their trains, and railroad passengers who desired to reach their destination by means of the street railway, likewise used and remained in the defendant company's waiting rooms until the arrival of the next street car.  There was no agreement between the defendant company and the street railway as to such use. The waiting rooms were so used by the passengers of both companies for the purposes aforesaid by the permission of the defendant company, at least it does not appear that any objection was made by the defendant company to such use since the street railway was in operation, about ten years. As said before, Miss Powell and her friend, Miss Gaunt, alighted on the platform in safety.  It was a dark, rainy, stormy night.  There was no shelter for passengers on the south platform except a small open shed.  Miss Powell had been at Langhorne several times before and had used the waiting rooms, but she had not been at Langhorne since the passenger station had been moved.  Miss Gaunt had been a frequent visitor at Langhorne and was well acquainted with the use of the waiting rooms, but had not been there since the station had been removed.  They could not reach Mr. Palmer, who lived north of the railroad, without crossing the tracks.  They could not cross from the point where they were on the platform to the waiting rooms on the north side because of an iron picket fence between the east and west-bound tracks, extending from a point west of the station to the line of Bellevue avenue, a public street crossing, the gates in front of the station being closed.  They walked on the cinder walk to Bellevue avenue over the public street crossing to the north side of the railroad, at the end of the cinder walk, which led to the station and waiting rooms, about 190 feet west of Bellevue avenue.  At this point they were as near to the street car line as they were at the station waiting rooms.  They could have proceeded directly to Mr. Palmer's by the public streets, or they could have gone to the public licensed hotel opposite

the street to wait for a car. They, however, did not do so. They took the newly laid cinder walk or platform to the railroad station. They entered the waiting room and at once passed through it to the back door to see whether Mr. Palmer was there with a carriage. It was through the back door that passengers usually took their carriages before the station was moved. They found the door was locked. They looked through the windows and found Mr. Palmer was not there. They then went to the booth and telephoned to Mr. Palmer to know what to do. He told them to sit down and wait. In a short time Mr. Palmer arrived to take them home in the street car. Their purpose of using the waiting room was to meet Mr. Palmer in the first place, and afterwards to await his arrival to take them home, and to secure shelter from the storm in the meantime. They then waited for the arrival of the next car which was due at 7:40. On the arrival of the street car Mr. Palmer, the plaintiff, and Miss Gaunt, with a number of others were waiting there for the same purpose. They all passed down a little bridge from the elevated temporary platform in front of the waiting room to the temporary cinder walk laid along the tracks where the old platform had been taken up the day before. It was while they were passing along this walk to meet the street car that Miss Powell was struck by a passing express train from the east and was injured. During this period the waiting rooms were open for the use of the defendant's passengers. Miss Powell held a return ticket to Philadelphia.

The court discharged the rule for a new trial and judgment non obstante veredicto, and entered judgment on the verdict.

*Errors assigned* were (1) in instructing the jury that plaintiff's " rights as a passenger had not ceased," and (6) in discharging rule for judgment for defendant non obstante veredicto.

*Wm. C. Ryan*, with him *Henry D. Paxson*, for appellant. —The defendant was not guilty of negligence : Graham v. Penna. Co., 139 Pa. 149.

The plaintiff, at the time of the accident, had ceased to be a passenger and became a mere licensee, to whom the defendant

company owed only the duty of not inflicting willful injury upon her or being so grossly negligent toward her as would amount to willful injury : Gillis v. Penna. R. R. Co., 59 Pa. 129 ; Heinlein v. R. R. Co., 147 Mass. 136 (16 N. E. Repr. 698).

The plaintiff was guilty of contributory negligence : Delaware, etc., R. R. Co. v. Cadow, 120 Pa. 559 ; Carroll v. Penna. R. R. Co., 12 W. N. C. 348 ; B. & O. R. R. Co. v. Schwindling, 101 Pa. 258 ; Penna. R. R. Co. v. Bell, 122 Pa. 58 ; Matthews v. Penna. R. R. Co., 148 Pa. 491.

*Henry A. James*, with him *Howard Cooper Johnson*, for appellee.—The evidence proved conclusively that the negligence of the defendant was the cause of the accident : Langan v. Ry. Co., 72 Mo. 392 ; Dobiecki v. Sharp, 88 N. Y. 203.

The plaintiff at the time of the accident had not ceased to be a passenger and the defendant company still owed to her all the duties which it owed to a passenger : Girton v. R. R. Co., 199 Pa. 147 ; Girton v. Lehigh Valley R. R. Co., 17 Pa. Superior Ct. 143 ; Louisville, etc., R. R. Co. v. Keller, 47 S. W. Repr. 1072 ; Keefe v. R. R. Co., 142 Mass. 251 (7 N. E. Repr. 874).

There was no contributory negligence on the part of the plaintiff : Louisville, etc., R. R. Co. v. Keller, 47 S. W. Repr. 1072 ; Betts v. R. R. Co., 191 Pa. 575 ; Flanagan v. Philadelphia, etc., R. R. Co., 181 Pa. 237 ; Penna. R. R. Co. v. White, 88 Pa. 327 ; Kohler v. Penna. R. R. Co., 135 Pa. 346 ; Girton v. R. R. Co., 17 Pa. Superior Ct. 143 ; Penna. R. R. Co. v. Green, 140 U. S. 49 (11 Sup. Ct. Repr. 650) ; Texas, etc., Ry. Co. v. Brown, 78 Texas, 397 (14 S. W. Repr. 1034) ; Ill. Cent. R. R. Co. v. Foley, 53 Fed. Repr. 459 ; Penna. R. R. Co. v. White, 88 Pa. 327.

OPINION BY MR. JUSTICE ELKIN, April 20, 1908 :

After careful consideration we have concluded that the first assignment of error must be sustained. Whether the plaintiff remained in the waiting room for an unreasonable length of time so as to become a loiterer or mere licensee, was, under the circumstances of this case, a question of fact to be determined by the jury. The learned trial judge in his opinion overruling the motion for a new trial and for judgment non obstante ver-

edicto states that this was a question for the jury and that it was so submitted, but upon an examination of the charge it is clear that this question was not submitted to the jury with instructions for them to determine this fact. On the other hand, the jury were instructed that "according to the view which the court takes of that situation, the court will instruct you that her rights as a passenger had not ceased." This had reference to the exact question whether she had remained at the station an unreasonable length of time, and it can only be construed as a binding instruction to the jury. This binding instruction was followed by a general discussion of the facts relating to this particular question, but nowhere does it appear that any direction was given to the jury to determine this exact question. The effect of the charge in this respect can only be considered as binding instructions upon the question of reasonable length of time, and therefore the jury were not left to determine whether, under the circumstances, she had remained an unreasonable time at the station. We do not agree with the contention of the learned counsel for appellant that the relation of carrier and passenger had ceased as soon as plaintiff had been discharged from the train on the south side and had proceeded from that point to the station house on the north side of the railroad tracks, being the point nearest her destination. This position is predicated on the thought that in passing from the station house on one side to the station house on the other, the passenger passed over the tracks at a public crossing. If the railroad company had chosen to make a public crossing a convenience for its passengers in going from the station on one side of its tracks to that on the other, it cannot be excused for an act of negligence on the ground that the relation of carrier and passenger had ceased the moment the passenger placed his foot upon the public highway. The general rule is that the relation of carrier and passenger begins as soon as one intending in good faith to become a passenger enters in a lawful manner upon the carrier's premises to engage passage, and that relation continues to exist until the passenger has been made aware of his arrival at the place of destination and has had a reasonable time to alight from the car and to leave the premises of the carrier. The duty of the defendant company under this general rule in the present case did

not cease the moment plaintiff alighted from the train on the south side of the tracks, nor when she proceeded in the direction ordinarily taken by passengers to reach the station on the north side of the tracks, nor did it cease then until she had a reasonable opportunity to make her arrangements to depart. And right here is the pinch of the case on the question raised by the first assignment of error. Clearly the plaintiff had the right after alighting from the train to proceed to the station on the opposite side of the tracks to await the arrival of a friend who was to meet her there. She was delayed a considerable length of time, and for the reason stated in the testimony she remained in the waiting room until the friend whom she intended to visit called for her. In this connection we quite agree with the suggestion made by the learned counsel for appellant that it was no part of the duty of the railroad company to furnish a waiting room for the intending passengers of a street railway company with which the railroad company had no connection, and if it clearly appeared that the only purpose of the plaintiff after alighting from the train at the south side of the tracks was to go to the station on the north side, for the purpose of awaiting the arrival of a street railway car on which she intended to become a passenger, there could be no recovery because the relation of carrier and passenger would, under these circumstances, have ceased to exist before the injury occurred. But we do not so understand the testimony on this branch of the case. The plaintiff went to the station by the ordinary route, either to meet her friend or await his arrival in order to accompany her to her place of destination. The friend who was to meet her at the station might have walked, or even driven in a carriage, or come as a passenger on the street railway, and the manner of his coming would in no way affect her rights as a passenger of the railroad company. Under these circumstances the plaintiff had a right to make use of the waiting room of the defendant company for a reasonable length of time, and what was a reasonable length of time was a question of fact to be determined by the jury. It was the duty of the court to instruct the jury to first determine this question before proceeding to inquire into the alleged negligence of the defendant company, because the right to recover at all

depended upon the determination of this question by the jury. If it should be determined that plaintiff had remained at the station an unreasonable length of time before her departure, it would necessarily follow that the relation of carrier and passenger had ceased, and there could be no recovery for an injury subsequently sustained. As we view the testimony the question of negligence was too broadly submitted to the jury. It was not negligence on the part of the defendant company to run the train which caused the injury on its own tracks and at the usual rate of speed for that train. The question of signals, headlights and other incidental matters connected with the running of the train, about which some testimony was furnished at the trial, has no connection with this case. The negligence, if any, of the defendant company is in no manner connected with the running of the train which caused the injury. It was the duty of the defendant company to provide safe means of access to and departure from its station for the use of passengers, and the plaintiff in the present case had a right to assume that the means of ingress and egress were reasonably safe. It was the duty of the defendant company to make and maintain the walk in a reasonably safe condition, and if, on the night of the accident, the walk was torn up or covered with obstructions which interfered with its proper use, or which caused the plaintiff to walk too close to the railroad tracks in order to avoid the obstructions, and if this condition of the walk was the proximate cause of the injury, there can be a recovery of damages for the injuries thus sustained. Again, it was the duty of the defendant company to keep the walks and approaches to the station properly lighted at night or when required. This duty was more imperatively demanded of the defendant company in the present case because of the close proximity of the walk to the railroad tracks, which necessarily made it somewhat dangerous. As we view it, there are only two questions of negligence to be submitted to the jury, that is, was the walk reasonably safe for the use intended and was it sufficiently lighted, and if not, was failure to perform these duties the proximate cause of the accident?

It was the duty of plaintiff to use reasonable care in order to avoid danger. She was charged with notice that the defendant company had a right to run its trains on its own

tracks at any time it suited its purpose to do so, and that a train might pass along while she was on the walk, and the duty rested on her to use reasonable care in order to avoid danger to her person. If she walked too close to the railroad tracks without looking ahead and without exercising such reasonable care as a prudent person should exercise under the circumstances and was injured by reason of her own neglect, clearly there could be no recovery. Under the circumstances, however, we have concluded that this question was also for the jury.

Judgment reversed and a venire facias de novo awarded.