365 Pa. 543 (1950)
Hamley et al., Appellants,
v.
Pittsburgh Railways Company.
Supreme Court of Pennsylvania.
Argued October 6, 1950.
November 13, 1950.
*544 Before DREW, C.J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.
Robert B. Ivory, with him Evans, Ivory & Evans and Harry E. Richter, for appellants.
D.H. McConnell, for appellee.
OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 13, 1950:
The appeals are from orders of the Court of Common Pleas of Allegheny County granting new trials *545 because of error of law in two trespass cases which were tried together.
Geraldine M. Hamley was seriously injured and Ruth Miller was killed, both being struck at the same time by a trolley car of the defendant, the Pittsburgh Railways Company. The Hamley suit was by the mother as guardian of the minor plaintiff and by the mother in her own right. The Miller case was a death action and a survival action by the administratrix. Substantial verdicts were rendered for plaintiffs in both cases.
The facts may be summarized thus: the young women, approximately 18 years of age, residents of Pittsburgh, were roller skating on the evening of January 19, 1948, at a skating rink located in the Borough of Forest Hills, some miles east of Pittsburgh. The building is located on the south side of U.S. Highway Route 30. The highway running east and west consists of two paved roadways, a dual highway. The southern side is used for traffic moving east from Pittsburgh (outbound) and the other or northern side is used for traffic moving west (inbound) to Pittsburgh. This highway is one of the important ones of the county and is heavily traveled. Between the two paved portions of the highway are two sets of open trolley tracks, built on stone ballast and wooden ties, with no surface paving, upon which the defendant operates its trolley cars. The trial judge, in his opinion for the court en banc, said: "Opposite the skating rink there is a passenger stop for street cars going in both directions, and long platforms have been constructed and maintained by the Company on its right-of-way. The outbound platform is 107 feet long, and the inbound 86 feet long. The westerly ends of the two platforms are about opposite each other, but the outbound platform extends about 21 feet eastwardly towards East Pittsburgh beyond the inbound platform. Between the two platforms are the open tracks of ties, ballast, and four 5-inch T-rails. There *546 is an asphalt crossing or crossover about 10 feet wide which goes over the tracks at grade and joins the two platforms. The center of this asphalt crossing is 25 feet eastwardly from the westerly ends of the platforms. Towards the easterly ends of the platforms there are car stop signs on an overhead wire. On the night of the accident an inbound street car was at the eastern end of the inbound platform taking on passengers. It was stopped in such a manner that the front door was opposite the platform, but the rear of the car extended back beyond the platform."
The young women came out of the skating rink around 11 p.m., and intended to take a trolley car on the inbound tracks to Pittsburgh. The night was clear and cold. As they came out of the building they observed a trolley car, which they desired to take, standing on the inbound track at the platform taking on passengers. They also observed an outbound trolley, approaching from Pittsburgh, about a block or more away. They hurried across the paved roadway (southern part moving east) and reached the outbound platform. Still hurrying they crossed the platform and entered upon the outbound tracks, attempting to cross over the tracks and reach the inbound trolley car still standing taking on passengers at the inbound platform. They were struck on the east bound track by the oncoming trolley car.
Judge EGAN said in his opinion granting the new trial:
"Considerable difficulty was encountered during the trial concerning the theory upon which plaintiff was presenting her case. After careful consideration of the matters involved, it is our opinion that the trial judge erred in permitting the case to be developed along lines applicable to the principles governing permissive crossings. This question arose at the inception of the trial, and the error made at that time was carried along *547 through the trial and into the charge. While we believe that the doctrine of permissive crossings over street car tracks in rural districts may exist for pedestrians using the way to cross the tracks, here the plaintiff was not a pedestrian as such, but was an intending passenger moving across the tracks to board a street car standing at the lower end of the inbound platform immediately under the overhead street car signs.
"The cases of Dickun v. Pittsburgh Railways Co., 308 Pa. 20, and Klingensmith v. West Penn Railways Co., 303 Pa. 487, hold that the status of the plaintiff is not exactly like that of a pedestrian at a public crossing, but is one of an intending passenger wishing to take a car at the station where a car regularly stopped at that hour, and at a place where he must cross the tracks to be on the side where the car door was located. In the instant case the plaintiff had passed over the outbound platform of the Company on its own right-of-way, and under Powell v. Philadelphia & Reading Railway Co., 220 Pa. 638, the relation of carrier and passenger had begun.
"It has been definitely decided that the doctrine of permissive crossings has no application to street railway tracks located in a public thoroughfare: Ferencz v. Pittsburgh Railways Co., 341 Pa. 369. In the instant case the street railway tracks were not located in a public thoroughfare, but on its own private right-of-way. Lying between the east and west bound paved highways which constitute U.S. Route 30 in the Borough of Forest Hills, with a tremendous amount of vehicular travel running in both directions parallel to the Company's tracks, the scene of the accident cannot be likened to a crossing over street car tracks in a rural district.
"Defendant seeks judgment in its favor notwithstanding the verdict, but when consideration is given to the ennoneous theory running through the entire record, *548 and the erroneous rulings of the trial judge, we feel that the interests of justice will best be served by the granting of a new trial."
He gave a certificate reading as follows: "In accordance with the request of Plaintiffs' counsel, and following the practice suggested in Lawrence vs. Gillespie, 300 Pa. 584, we now make a definite judicial statement that our order granting a new trial in the above entitled case was founded entirely, to the exclusion of all else, on the disposition of a question of law, namely: that the Court erred in admitting evidence of a permissive crossing over defendant's tracks at the place of collision and in submitting to the jury the question of the existence of a permissive crossing and an issue as to the rights of the parties as related to such crossing. A new trial would not have been granted in this case except for the fact that the trial judge permitted the introduction of said evidence and instructed the jury to determine the existence of a permissive crossing and to pass upon the rights and duties of the parties incident to such a crossing."
We agree with the learned court below that the trial judge in his charge so permeated the case with the inapplicable doctrine of permissive crossings that it constituted an error of law which necessitates the granting of new trials.
A permissive crossing is a defined foot path leading to and crossing over railway tracks, which is being habitually used and places upon the railway company a duty of care comparable to that required at a regular crossing: Rachel E. Taylor et al. v. The Delaware & Hudson Canal Co., 113 Pa. 162, 8 A. 43; Figard et al., v. Pennsylvania Railroad Company, 361 Pa. 380, 65 A. 2d 411.
This doctrine, however, relates solely to pedestrians, not to intending passengers engaging in embarking or disembarking from trains or cars of defendant railway *549 companies. When a person enters upon the premises of a railway company, intending to become a passenger on its trains or cars, he immediately acquires the status of an "intending passenger": Powell v. Philadelphia & Reading Railway Company, 220 Pa. 638, 70 A. 268. Where the carrier provides safe platforms for ingress and egress to and from its cars and maintains a safe and defined crossing over its tracks connecting the platforms, the duty imposed upon the railway company in the operation of its trains or cars is that of due care under all the circumstances: Klingensmith v. West Penn Railways Co., 303 Pa. 487, 491, 154 A. 811; Dickun v. Pittsburgh Railways Co., 308 Pa. 20, 21, 161 A. 739.
While the doctrine of permissive crossings is inapplicable in this case, we have decided that it is likewise inapplicable where railway tracks are located in a public thoroughfare: Ferencz v. Pittsburgh Railways Co., 341 Pa. 369, 19 A. 2d 385. We note that both counsel and the court assume and state that the right-of-way under consideration is "a space owned by the defendant." The record, however, is barren of evidence disclosing whether or not U.S. Highway Route 30 includes the entire area of the two paved lanes and the trolley road bed, or in what manner, under what title, or under what right defendant uses such right-of-way. Cf. Di-Blasi et al. v. Pennsylvania Railroad Company et al., 361 Pa. 181, 63 A. 2d 70.
Order affirmed.